ST. JOHNS N. F. SHIPPING CORPORATION, OWNER, &c. *v.* S. A. COMPANHIA GERAL COMMERCIAL DO RIO DE JANEIRO.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 43. Argued October 4, 1923.—Decided November 12, 1923.

1. A preliminary freight reservation agreement for carriage of goods " on or under deck, ship's option," and subject " to terms of bills of lading in use by steamer's agents," gives the ship an option as to place of stowage; and, in the absence of a general port custom to the contrary, the issuance thereafter of a clean bill of lading amounts to a positive representation by the ship that the option has been exercised and that the goods will go under deck. P. 123.

2. Where rosin shipped under a clean bill of lading was stowed on deck, and was jettisoned during the voyage to relieve the ship in a storm, *held,* that the ship was liable as for a deviation, could not escape by reason of relieving clauses in the bill, and must pay damages measured by the value of the goods at destination. P. 124.

280 Fed. 553, affirmed.

CERTIORARI to a decree of the Circuit Court of Appeals which affirmed a decree of the District Court, in admiralty, awarding damages against a ship for loss of cargo.

*Mr. Clarence Bishop Smith,* with whom *Mr. Henry M. Hewitt* was on the brief, for petitioner.

Silence in a bill of lading may give rise to a promise to carry cargo under deck, but in every such case this is due to the fact that the surrounding circumstances are such as to make a reasonable man presume that the shipowner will carry the cargo under deck. Silence of itself is not a promise. It is the surrounding circumstances which speak. There are three leading classes of cases: (1) where shipment under deck is customary and there is no controlling contract; (2) where shipment on or under deck, at ship's option, is customary and there is no controlling contract; (3) where custom is controlled by contract.

(1) On the first class, where shipment under deck is customary, and no contract controls, see, *The Delaware,* 14 Wall. 579; *The Sarnia,* 278 Fed. 459. These cases squarely support the three classifications above set forth. In both, goods were carried in a trade where it was customary to carry under deck and nothing was stated in the bill of lading about the place of shipment. In both, testimony was offered to modify the custom by an oral contract, and the court refused to admit such evidence on the ground of the parol evidence rule. With such evidence shut out, both courts construed the bill of lading, which thus constituted the entire contract between the parties, to give a promise to carry under deck. In the absence of a proved contract modifying the custom, the custom spoke when the bill of lading was silent.

(2) Where shipment on or under deck, at ship's option, is customary, and there is no controlling contract, the usual bill of lading is issued, making no mention of stowage on deck, and the consignee cannot complain if cargo is stowed on deck. If the shipper wishes to find out if the cargo has been stowed on deck he must inquire. This type of cases dates from the earliest days and is referred to in the summary of the law given in *The Delaware, supra.* An example is *The Del Norte,* 234 Fed. 667; *Barber* v. *Brace,* 3 Conn. 9.

(3) Deck shipment controlled by contract. There is nothing inconsistent between a bill of lading with no loading endorsement on it, and a written contract allowing shipment on deck. The two documents should be construed together. The leading case is *Lawrence v. Minturn,* 17 How. 100. See *Gould* v. *Oliver,* 4 Bing. 134.

*The Delaware* and *The Sarnia,* where relied on by the opinion of the court below in the present case, deal with the parol evidence rule and the construction of the bill of lading in the absence of a provable written agreement. In order that there may be no misconception as to the scope of the decisions, they expressly state that if there was a clean bill of lading and written consent to stow on deck, the carrier can stow on deck. In *Lawrence* v. *Minturn* the written consent was expressed exactly as it was in the instant case in the freight contract.

(4) No duty on carrier to notify shipper as to stowage. The cargo owner asks this Court to find that there was an implication in the contract that notice of the place of stowage would be stated in the bill of lading. There is no reason for the implication; notice to the shipper of the deck stowage was not essential to the carriage of the rosin, and, if the shipper required notice as to how the option was to be exercised, it should have so provided in the contract of affreightment. *Armour & Co.* v. *Walford,* [1921] 3 K. B. D. 473.

The freight contract as drawn up by the shipper's broker was the basic agreement. It set forth the terms of carriage, named the vessel, the freight rate, the nature and the amount of cargo and stipulated that the shipment might be stowed on deck at ship's option. It further stated that it was subject to the conditions of the Act of Congress of February 13, 1893, and to terms of bills of lading in use by the vessel's agents.

The nature of a bill of lading is such that it operates both as a receipt and as evidence of the contract of car-

riage. Michie, Carriers, p. 331; *Van Etten* v. *Newton,* 134 N. Y. 143.

The bill of lading on which libelant relies functioned primarily as a commercial shipping receipt and secondarily as a contract of carriage to the extent that its provisions supplemented the original agreement. There is no sound reason for ignoring the original contract, which permitted stowage on deck. *Herr* v. *Tweedie Trading Co.,* 181 Fed. 483; *Ardan S. S. Co.* v. *Theband,* 35 Fed. 620; *Northern Pacific R. R. Co.* v. *American Trading Co.,* 195 U. S. 439; *Donovan* v. *Standard Oil Co.,* 155 N. Y. 112.

In any event, the liability of the schooner should have been limited to the invoice cost of the cargo as provided by the bill of lading.

It was error to hold that the bill of lading and all its terms were wiped out by the absence of a notation on the bill of lading that the shipment was on deck. The consent to deck stowage was sufficiently evidenced in the bill of lading as issued when that document is read in conjunction with the freight contract that preceded it.

Under the circumstances of this case, the deck stowage is not analogous to a voluntary deviation, and the effect of such deviation, namely, the wiping out of the conditions of a bill of lading, is not involved. In deviating, the ship breaches the entire contract and should not be allowed to revive it for the purpose of cutting down the damages. *The Sarnia,* 278 Fed. 459, distinguished. See *The Hadji,* 18 Fed. 459; *The Oneida,* 128 Fed. 687.

*Mr. E. Curtis Rouse,* with whom *Mr. J. Dexter Crowell* was on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The General Commercial Company, Ltd., doing business as commission merchant and exporting concern at

New York, in May, 1918, sold 800 barrels of rosin c. i. f. to the respondent, a Brazilian corporation, and procured a written freight reservation or agreement from the agents of the schooner St. Johns N. F. to carry the goods to Rio de Janeiro, "on or under deck, ship's option," and subject "to terms of bills of lading in use by steamer's agents."

The rosin was loaded on board June 11th and clean receipts—without endorsement concerning stowage— were given therefor. A day or two later, upon prepayment of freight, the ship issued a clean bill of lading in the usual form. It contained no reference to the prior freight agreement.. The goods were placed on deck, but neither the shipper nor the consignee knew this until after the loss occurred. There was no general custom at the port so to stow goods of this kind for such a voyage. The vessel was a general ship carrying many kinds of merchandise and no charter-party question is involved. She sailed from New York June 19th. Before reaching Rio de Janeiro she encountered a storm and for sufficient cause the master jettisoned the rosin in order to relieve her. The loss resulted directly from the ondeck stowage; the underdeck cargo was safely delivered.

Respondent libeled the schooner and demanded the value of the goods at destination. It claims that by issuing the clean bill of lading the vessel in effect notified the shipper that she had exercised the option specified by the freight agreement and would stow under deck. Also, that the ship broke her contract as by deviation and thereby lost the benefit of limitation or relieving clauses in the bill.

The owners maintain that as the freight agreement gave an option as to place of stowage it was unnecessary for the bill of lading to specify the action taken in respect thereto, and that silence did not amount to a promise to carry under deck. Moreover, that consent to deck stowage sufficiently appeared by the bill of lading read

with the freight agreement and therefore there was no departure and no ground for assessing damages.

The court below sustained the position of the respondent and decreed accordingly. 280 Fed. 553.

We find no conflict between the written original freight contract and the bill of lading. The former referred to a bill thereafter to be issued and made the place of stowage optional with the ship. When issued under such circumstances the bill amounted to a declaration that the option had been exercised and the goods would go under deck.

We are not dealing with a case arising under a general port custom permitting above deck stowage notwithstanding a clean bill, with notice of which all shippers are charged. When there is no such custom and no express contract in a form available as evidence, a clean bill of lading imports under deck stowage. *The Delaware,* 14 Wall. 579, 602, 604, 605. Upon this implication respondent had the right to rely. To say that the shipper assented to stowage on deck is not correct. It gave the vessel an option, and the clean bill of lading amounted to a positive representation by her that this had been exercised and that the goods would go under deck.

By stowing the goods on deck the vessel broke her contract, exposed them to greater risk than had been agreed and thereby directly caused the loss. She accordingly became liable as for a deviation, cannot escape by reason of the relieving clauses inserted in the bill of lading for her benefit,[1] and must account for the value at

---

[1] The bill of lading provides—

" The carrier shall not be liable for loss or damage occasioned by, due to or arising from causes beyond the carrier's control, by the act of God, vis major, by collision, stranding, jettison or wreck, perils of the sea or other waters, by fire from any cause or wheresoever occurring."

" In computing any liability for negligence or otherwise, by the shipowner as carrier or otherwise, regarding any property hereby

destination. Generally, the measure of damages for loss of goods by a carrier when liable therefor is their value at the destination to which it undertook to carry them. *Lawrence* v. *Minturn,* 17 How. 100, 111; *Mobile & Montgomery Ry. Co.* v. *Jurey,* 111 U. S. 584, 596; *New York, L. E. & W. R. R. Co.* v. *Estill,* 147 U. S. 591, 616; *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.,* 253 U. S. 97, 100; *Royal Exchange Shipping Co.* v. *Dixon,* 12 A. C. [1887] 11; *The Sarnia,* 278 Fed. 459; Hutchinson on Carriers, vol. 3, § 1360; Carver on Carriage of Goods by Sea, 6th ed., § 287.

*The decree below is affirmed.*

---

receipted for no value shall be placed on the said property higher than the invoice cost not exceeding $100 per package (or such other value as may be expressly stated herein), nor shall the shipowner be held liable for any profits or consequential or special damages, and the shipowner shall have the option of replacing any lost or damaged goods."