## HAMILTON et al. v. UNITED STATES et al.

### THE EASTERN TEMPEST.

District Court, S. D. New York. December 8, 1927.

**Shipping ⊜125—Diversion from direct route for additional cargo held not deviation under terms of bills of lading.**

Under bills of lading giving steamship liberty "to proceed to and use any port or ports in any rotation for any purposes whatsoever, whether in or out of, or beyond, the customary or advertised route, and all such ports shall be deemed to be included in the intended voyage," that the ship went 168 miles out of the customary and direct route, which was 3,400 miles in length, to take on additional cargo, *held* not a deviation.

In Admiralty. Suit by Frank Hamilton and Robert Adamsen, doing business as Frank Hamilton & Co., against the United States and others. Decree for respondents.

Burlingham, Veeder, Masten & Fearey, and William J. Dean, all of New York City, for libelants.

Charles H. Tuttle, William E. Collins, and Charles E. Wythe, all of New York City, for respondents.

BONDY, District Judge. This suit was brought to recover for the damage to apples shipped at New York, September 23, 1922, on the steamship Eastern Tempest, for transportation to Hull, England.

The bill of lading provided for the transportation of apples received in apparent good order "by the steamship Eastern Tempest, now lying at the port of New York and bound for the port of Hull, or following or subsequent steamer, with liberty, in addition to any liberty expressed or implied in this bill of lading, to proceed to and use any port or ports, in any rotation for any purposes whatsoever, whether in or out of, or beyond, the customary or advertised route, and all such ports shall be deemed to be included in the intended voyage."

It also provided: "All claims for short delivery, loss, or damage, or of whatsoever nature must be made in writing to the steamer's agent at the port of destination of the steamer, within 90 days after delivery of the goods to the carrier at the port of shipment, and, in case of damage, always before the goods are removed from the custody of the carrier, and, in case such claim shall not be presented in writing within said time and place, the same shall be waived and the carrier discharged therefrom. No suit or proceeding to recover under the bill of lading, or in respect of the goods, shall be maintained unless commenced within six months after the delivery of the goods to the carrier at the port of shipment, and the lapse of such period shall be a bar to recovery in any suit or proceedings not sooner commenced, notwithstanding the carrier may be a nonresident or foreign corporation."

On September 26, the steamer sailed from New York and proceeded to St. John, New Brunswick, where she arrived September 29, and where she loaded a large cargo of sugar. She sailed from there October 3 and reached Hull October 19, with the apples in a damaged condition.

The respondent contends that it is relieved from all liability because no claim was presented nor suit commenced within the time specified in the bills of lading.

The libelant contends that the Eastern Tempest deviated by going to St. John, and that the deviation deprived the respondent of all benefits of the terms of the bill of lading and rendered the respondent liable as insurer for all damage suffered by the apples during the voyage, no matter from what cause arising. See The Sarnia (C. C. A.) 278 F. 459, 463; The St. Johns N. F. (C. C. A.) 280 F. 553, 556, affirmed 263 U. S. 119, 124, 44 S. Ct. 30, 68 L. Ed. 201.

The Eastern Tempest was advertised as sailing for Hull, without any reference to her going to St. John. Almost all respondent's Hull-Newcastle steamers made direct voyages to Hull and Newcastle. This was the only voyage to St. John made by any of respondent's Hull-Newcastle steamers up to that time.

There is no evidence that any other steamer bound from New York to British ports ever called at St. John.

In The Panola (Dietrich v. United States Shipping Board Emergency Fleet Corp.) 9 F.(2d) 733, 1925 A. M. C. 1173, the Circuit Court of Appeals of this circuit considered a similar provision, and held that the Panola, which on August 31, 1921, at Philadelphia, accepted merchandise consigned to Helsingfors, Finland, and which was expected to begin her voyage from Philadelphia, September 5, 1921, did not deviate by remaining at Philadelphia to September 8, 1921, then going to New York, remaining there till September 30, 1921, and then returning to Philadelphia where she remained till October 5, 1921.

In The Blandon (D. C.) 287 F. 722, 725, approved in The Panola, the Blandon loaded cargo at New York for Valencia, Spain, then proceeded to Philadelphia to load additional cargo, and returned to New York for ad-

ditional cargo before sailing for Valencia. Judge Learned Hand said:

"Yet it was expressly agreed that the port might be 'out of the customary route.' What more limited sense can those words mean than a stop at a place some thirty hours away? It is said that the clause will allow only reasonable deviations, and this is indeed true, since such a clause is to be construed in its context. * * * For example, it might not allow a side voyage to Tampico or Galveston; certainly it would not permit a call at Rio or Montevideo. But it must mean to give the ship permission to steam by a different route from that she was otherwise bound to take, besides giving her leave to make ports of call en route; i. e., 'in * * * the customary route.' Such permission involves delay, and was meant to involve delay. * * * When contained in a bill of lading for a mixed cargo, it must be read as intended to give the ship some latitude in making up that cargo."

"The scope of the voyage may include ports not exactly in the ordinary track of the specific voyage, but not those far outside or beyond the ordinary track." U. S. Shipping Board Emergency Fleet Corp. v. Rosenberg Bros. & Co. (C. C. A.) 12 F.(2d) 721. See, also, The Sidonian (D. C.) 34 F. 805; South Atlantic S. S. Line v. London-Savannah Naval S. Co. (C. C. A.) 255 F. 306; The Emelia S. de Perez (D. C.) 287 F. 361; The Neshaminy (United States Shipping Board Emergency Fleet Corp. v. Pensacola Lumber & Timber Co.) 290 F. 358, 1923 A. M. C. 708 (C. C. A.); The Citta Di Messina (D. C.) 169 F. 472; The Esrom (C. C. A.) 272 F. 266, certiorari denied 257 U. S. 634, 42 S. Ct. 47, 66 L. Ed. 408.

The facts in this suit are distinguishable from those considered in The Willdomino, 272 U. S. 718, 47 S. Ct. 261, 71 L. Ed. 491, 1927 A. M. C. 129, affirming (C. C. A.) 300 F. 5, relied on by the libelants, in which the United States Supreme Court held that calling at North Sidney, Nova Scotia, for bunkers on a voyage from Messina, via the Azores, to New York, was an inexcusable deviation which made the steamer liable as an insurer for any damage suffered by the cargo, notwithstanding that the bill of lading provided that the steamer had "liberty to call at intermediate ports or any port or ports, in or out of the customary route, in any order, to receive and discharge coal, cargo, passengers, and for any other purpose." The court decided that in proceeding for five or six days after she left Ponta Delgada, in the direction of New York, the vessel deviated from any permissible course to North Sidney, even if she had the right to go and intended to proceed to the latter port from Ponta Delgada.

The Eastern Tempest develops about 9½ knots an hour and it takes a 9½-knot steamer from 18 to 20 days to make a voyage direct from New York to Hull in fair weather, and from 25 to 30 days in bad weather. On the voyage in question she went from New York to Hull in 23 days, including her stay for 5 days at St. John. On her second voyage she went direct from New York to Hull in 32 days, and on her third voyage direct from New York to Hull in 21 days. The distance from New York to Hull is 3,412 miles. By way of St. John it is 3,580 miles, or 168 miles more. The bill of lading provided for the shipment of the apples by the Eastern Tempest or following or subsequent steamer. It did not provide for a direct voyage, but expressly permitted the ship to proceed out of the customary or advertised route, and it expressly stated that ports out of the customary or advertised route shall be deemed to be included in the intended voyage.

Under such circumstances, I cannot find that the Eastern Tempest deviated by going with the apples to St. John, only 168 miles out of her direct course, for additional cargo.

Proctor for libelants having admitted that "We are clear out of court unless we can show deviation," there must be a decree for respondent dismissing the libel.