## THE SOUTHLANDS.

## LONE STAR S. S. CO. v. KIRBY LUMBER CO.

Circuit Court of Appeals, Fifth Circuit. January 27, 1930.

No. 5566.

W. E. Cranford, of Galveston, Tex. (Armstrong & Cranford, of Galveston, Tex., on the brief), for appellant.

Carl G. Stearns, of Houston, Tex. (Fulbright, Crooker & Freeman, of Houston, Tex., and Single & Single, of New York City, on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The Lone Star Steamship Company appeals from a decree holding its steamship, the Southlands, liable

to the appellee, Kirby Lumber Company, for the value of lumber that was received for shipment, but was not delivered at destination.

The Southlands received from the Kirby Lumber Company at Beaumont, Tex., 1,543 pieces of rough lumber and 15,124 pieces of lumber that was dressed and dry-kilned, for delivery to the shipper or its assignee at Santo Domingo in the West Indies. The bills of lading provided that the ship should be exempt from liability on account of perils of the sea and should have the benefit of any insurance on the lumber; but they were silent as to whether the stowage should be under deck or on deck. Of this lumber 1,302 pieces were stowed under deck and arrived safely at destination. The remaining 15,365 pieces were, without appellee's knowledge, stowed on deck, and it became necessary to jettison them during a severe hurricane which struck the ship before it arrived at Santo Domingo. The loss was caused by the stowage on deck; there would have been no loss if the stowage had been under deck. The shipment was covered by an open policy, issued by the American Insurance Company, which, reserving the right of subrogation, insured the lumber, lost or not lost. Higher rates were to be charged for lumber on deck than for lumber under deck, and it was provided that the insurance should apply only to lumber under deck unless it was otherwise specified, but that the insurance company would accept an additional premium and be liable in case of deviation, or other variation of risk, arising out of unintentional omission, error, or failure of the insured properly to declare any shipment. After the loss here involved was known to it, the insurer issued riders covering the lumber on deck, and paid for such of it as was jettisoned during the hurricane. Appellant, after it received information of the settlement made by the insurance company, mailed to appellee a draft in payment for lumber which arrived safely at destination, but which was not delivered, and a release, to be signed and returned, from all liability under the bills of lading. Appellee cashed the draft, but, upon objection being made by the insurance company, did not sign or return the release. Appellant attempted to prove a custom of steamship companies at the port of Beaumont to load cargo received under a clean bill of lading on or under deck in the absence of instructions from the shipper. But the evidence went no further than to show that after the war, up to 1921, appellant maintained the only steamship line engaged in carrying lumber from Beaumont and other ports' in the Sabine district to Santo Domingo, and that during this period it insisted upon the right to load dressed lumber on deck or refused to accept it; but even then it was the custom to notify shippers and to stamp on bills of lading the option to stow on or under deck. The shipment in question was made in 1924, and since 1921, when Lykes Bros. became a competitor of appellant, it has been the custom of all steamship companies, including appellant, not to stow lumber on deck under a clean bill of lading. The libel was brought for the benefit of the American Insurance Company.

Appellant contends that the decree was erroneous, on the grounds: (1) That the insurance was placed after the lumber was lost; (2) that the insurance company by paying for the lost lumber waived any objections it might otherwise have had to the stowage; (3) that appellee's acceptance of payment for that part of the lumber which was received, but not delivered, constituted accord and satisfaction; and (4) that the stowage was proper under a custom which existed at Beaumont.

██ The open policy provided insurance on cargo lost or not lost, and bound the insurance company to protect cargo that was improperly stowed through the inadvertence or without the knowledge of the insured. The issuance of the rider was but an acknowledgment of a liability that existed from the time the bills of lading were given and accepted. The obligation of the insurance company being such as it was, there could not possibly be any waiver involved in the payment of insurance to the insured. The right of the insurance company to subrogation having attached, it was beyond the power of the insured to release appellant upon payment being made for that part of the cargo which was not lost in transit, but for which appellant was liable because of its failure to make delivery.

██ We agree with the district judge that there was no custom in existence at the time the shipment in question was made to stow on deck dressed lumber which was delivered in return for a clean bill of lading. The custom contended for by appellant, if it ever prevailed, had long since ceased to exist. These were clean bills of lading, under which it became appellant's duty to stow the lumber under deck, and its failure to do so constituted a deviation, which precluded its right to receive the benefit of insurance taken out by appellee. St. Johns N. F. Shipping Corpo-

ration v. Companhia Geral Commercial do Rio de Janeiro, 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201.

The decree is affirmed.