## THE MARGARET LYKES.

### THE ULUA.

#### No. 503.

District Court, E. D. Louisiana,
New Orleans Division.

July 31, 1944.

Findings of Fact, etc., Aug. 10, 1944.

Deutsch, Kerrigan & Stiles, of New Orleans, La., for plaintiff.

Terriberry, Young, Rault and Carroll, of New Orleans, La., for defendant.

Phelps, Dunbar, Marks & Claverie, of New Orleans, La., for United Fruit Co.

CAILLOUET, District Judge.

Libelant Texas Petroleum Corporation brought this suit against the vessels SS Ulua and S.S. Margaret Lykes and their respective owners, United Fruit Company and Lykes Bros. Steamship Company, Inc., alleging that its certain described truck that it sought to ship via said vessels from New Orleans, La., to Barranquilla, Colombia, was damaged in transit with the proximate result that, by reason of the injury and necessary expenses occasioned thereby, libelant sustained damages to the aggregate amount of $1,500, for which it seeks indemnification.

A stipulation entered into by the parties makes it appear that on or about March 21, 1940, libelant, through its agents, delivered, in good order and condition, to the S.S. Ulua and United Fruit Company, its owner, on the Port of New Orleans docks, one shipment of goods comprising nine boxes of seismographic equipment and a "1940 Norman Herrington 1½ ton Ford 4-wheel drive conversion Kelly-type seismograph shot hole drill truck," transfer of custody having been effected by the medium of two deliveries, for each of which a dock receipt was thereupon issued in due course—one covering the truck and one box of parts loaded thereon, and the other covering the remaining eight boxes of parts. The first mentioned dock receipt specifically called for "on deck" stowage of the truck and accompanying one box of parts, but no mention of this appeared in the subsequently issued bill of lading, covering the entire shipment of nine boxes and one truck. This bill of lading was never negotiated by the libelant, which was sole owner of all interest therein, and it is

agreed that all of its terms and conditions are made part of the stipulation.

In its originally prepared form the bill of lading specifically provided, in part, as follows:

"21. Unless a higher value be stated herein, the value of the Goods does not exceed $100.00 per package, and the freight thereon has been adjusted on such valuation, and no oral declaration or agreement shall be evidence of a different valuation. In computing any liability of the Carrier in respect of the Goods, no value shall be placed thereon higher than the invoice cost (including freight prepaid hereunder) not exceeding $100.00 per package (or such other value as may be stated herein), nor shall the Carrier be held liable for any damages for delay exceeding twenty per cent. of said cost not exceeding said value nor for any profits or increase of price or value over such cost not exceeding said value, nor for any special or consequential damage and the Carrier shall always have the option of replacing any lost or damaged Goods."

Imprinted on the face of said bill of lading there appeared, however these controlling additional provisions, to-wit:

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its right or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading is repugnant to said Act to any extent, such term shall be void to that extent, but no further."

Furthermore, under Section 4, subsection 5, of said Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315, it is provided as follows, viz.:

"Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *"

The freight charges agreed to and thereafter actually paid by the libelant were based on the regular rate called for by the United Fruit Company's tariffs, duly filed and approved, and were not calculated at such rate as would have been charged by the carrier if libelant had declared a valuation in excess of $500 per package, which it did not.

In due course the S.S. Ulua carried the whole of said shipment (all under deck except the truck) from New Orleans to Cristobal, Canal Zone, to then and there deliver the same for transshipment and carriage from Cristobal to Barranquilla, Colombia, via the S.S. Margaret Lykes of Lykes Bros. Steamship Company, Inc., as stipulated for in the bill of lading.

Delivery, in good order and condition, of all goods comprising the shipment took place at Cristobal and the nine boxes of parts were thereupon transshipped and carried therefrom, in and by the S.S. Margaret Lykes, to Barranquilla, where delivery of said nine boxes was duly effected in like good order and condition; and libelant's claim of damages, therefore, refers to none of said nine boxes of parts.

However, whilst the Lykes Bros. Steamship Company, Inc., was attempting to load libelant's truck (which was then in said company's exclusive care and custody) onto the S.S. Margaret Lykes at Cristobal, for transshipment and carriage to Barranquilla, substantial damage was done to said truck, which was thereupon transshipped to its final destination, at a later date, in the S.S. Velma Lakes; and delivery was effected by said carrier at Barranquilla, with the truck in no different damaged condition than it was when it was loaded for carriage, at Cristobal.

It is stipulated, particularly, that the damage sustained by the truck in no wise resulted from its having been stowed on deck and that no liability arose from the fact that it was the S.S. Velma Lykes, rather than the S.S. Margaret Lykes named in the bill of lading, that carried the damaged truck from Cristobal to Barranquilla.

Lykes Bros. Steamship Company, Inc., while admitting responsibility and its liability in damages for the aforerecited physical damaging of the libelant's truck, nevertheless insists that libelant should be indemnified in no greater principal sum than $500, although it is stipulated that $1500 does represent the physical damage sus-

tained by the truck and all expenses connected with or relating thereto.

In relation to the amount of damages actually due, it is stipulated by the parties that the question of interest and costs shall be determined as if either or both of the shipping companies and/or the proctors of either or both of the S.S. Margaret Lykes and the S.S. Ulua did, as of the date of such stipulation, i. e., January 31, 1944, formally tender to the libelant the sum of $500, "plus interest, if any, and all costs," and such tender was formally declined by libelant.

Libelant first contends that the carrying of the damaged truck on deck after issuance of a clean bill of lading constituted "deviation," which displaced the bill of lading contract and made each vessel liable as insurer; and that, consequently, the formerly existing limitation of liability to $500 per "package" or "customary freight unit" has been abrogated.

The dock receipt covering the subsequently damaged truck specifically called for on-deck stowage and furthermore expressly stipulated as follows, viz.: "The United Fruit Company's regular bill of lading in use by it for similar shipments (upon the basis of which freight rates are fixed) shall be issued for said goods to the above named shippers * * *. If the value of any of the goods exceeds $500.00 per package, a rate of freight, based thereon must be arranged before tender of the goods for shipment and the value of the goods be declared on delivery at the dock and inserted herein, failing which, the goods shall be conclusively deemed received subject to the bill of lading limitation of value and liability to the invoice cost not exceeding $500.00 per package."

It is true that, in attempted compliance with the dock receipt requirement that there should duly issue to libelant the carrier's regular bill of lading for similar shipments such as the tendered one, which involved the stipulated stowage on deck of libelant's truck, a clean bill of lading covering nine boxes of parts and the one truck was actually issued. The bill's failure to specify that the truck was to be carried on deck, as had been so previously stipulated for in the dock receipt, made libelant immediately cognizant of the fact that it was erroneous to that extent,—not that the carrier had breached its contract of carriage because of the truck's stowage on deck,

rather than under with the nine boxes of parts.

Undoubtedly, it is well settled that, ordinarily, the stowage of cargo on deck, when accepted for shipment under a clean bill of lading, operates a technical deviation and renders the vessel liable "as for a deviation," if the cargo at issue sustains loss or damage by reason of its having been so stowed on, rather than under, the deck. But such is not the case when the shipper holding a clean bill of lading nevertheless consents to and approves of the stowage on deck. The Delaware, 1872, 14 Wall. 579, 605, 81 U.S. 579, 605, 20 L.Ed. 779, 784.

In the case of The Southlands, D.C., 1928, 27 F.2d 1010, decided by then District Judge Joseph C. Hutcheson, Jr., and, on appeal to the Circuit Court of Appeals, Fifth Circuit, 1930, 37 F.2d 474, the stowage on deck, despite issuance of a clean bill of lading, was, admittedly, without the knowledge of the shipper. A similar situation obtained in the case of St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral Commercial do Rio de Janeiro, 1923, 263 U.S. 119, 44 S.Ct. 30, 68 L. Ed. 201, which, like the aforementioned cases of The Delaware and The Southlands, are cited by libelant in attempted support of its contention that the stowage on deck of its truck, in the face of the clean bill of lading, forecloses any further discussion as to the true state of affairs relating to the transportation of libelant's property from New Orleans to Barranquilla, and it contends that the contract of carriage was, perforce, displaced by the alleged improper on-deck stowage of the truck by the carrier, which should, as a necessary consequence, be held liable in damages as insurer and not under the liability limitation written into the bill of lading.

But, under such circumstances as attended the issuance of the clean bill of lading here in question, it is competent for the shipowner, as against the shipper, to show that it was agreed that a portion of the cargo accepted for shipment was to be carried on deck, even though the bill of lading erroneously fails to note the exception. See Two Hundred and Sixty Hogsheads of Molasses, D.C.Me., 1866, 24 Fed. Cas.No.14,296, page 445.

It is needless to observe that in this present case, there is no question of inadmissi-

bility of parol evidence to "vary" the terms of the written contract of carriage.

If it be conceded, for the present purpose, that there was an actual breach of the contract of carriage "as by deviation," then libelant had the option of choosing either one of the two courses of action open to it. On its becoming aware of the breach, libelant could have treated such breach as an outright repudiation of the contract of carriage, bringing it to a definite end. But it did not elect to do so. On the contrary, it chose the alternative course, which was to waive the "deviation" as final repudiation of the contract by the carrier, treat such contract as still fully subsisting, and have its property transported from New Orleans to Barranquilla, while reserving whatever legal right to damages it might subsequently be able to successfully urge, if loss or injury came to it by reason of carrying the truck on deck, rather than under; which safer stowage, the clean bill of lading, under ordinary circumstances, would import that the contracting parties intended to be used. Scrutton, Charterparties and Bills of Lading, 14th Ed.1939, Art. 99, p. 309 et seq.; Carver, Carriage of Goods by Sea, 8th Ed.1938, Sec. 16, p. 21; St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral Commercial do Rio de Janeiro, 1923, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201; The Tregenna, 2 Cir., 1941, 121 F.2d 940, 944.

Here, no loss or injury resulted from the carrying on deck, and any reserved right to claim damages on such a ground, as may have come into being when libelant elected to treat the contract of carriage as not repudiated but as subsisting, lapsed into nothingness when the truck's on-deck voyage terminated without ill effect.

Libelant having so elected to treat the contract of carriage as not repudiated, in order that it might avail itself of its terms calling for the transportation of its property from New Orleans to Barranquilla, the carrier had the right to insist upon the shipper's full compliance with its obligations as such, and to rely, itself, on any exception clause and limitation of liability clause in the contract, applicable to any casualty occurring after the act of the carrier (if the on-deck stowage of the truck did amount to a deviation despite the aforecited attendant circumstances), including damages proximately resulting from said act, or any other act of commission or omission making the carrier responsible to the shipper for indemnification.

Over and above the foregoing considerations, it is also well to remember that, admittedly, the injury done to the truck resulted, in no wise, from its having been carried on deck. The damage sustained would have occurred even though there had been no such alleged "deviation." Under such a state of facts no responsibility attaches to the carrier "as for a deviation." Scrutton; Carver; and Poor, supra; The Delaware, supra, 81 U.S. at page 598, 20 L.Ed. at page 782; The Hermosa, 9 Cir., 1932, 57 F.2d 20, 27; The San Giuseppe, 4 Cir., 1941, 122 F.2d 579, 586.

Libelant secondly contends that, even though it be so decided that there has occurred no deprivation of the right to plead the limitation of value clause in the bill of lading and the limitation of value provisions in the Carriage of Goods by Sea Act, nevertheless neither clause nor provisions are applicable, because it was an unboxed motor truck that was carried and damaged.

But this contention is no more sound than the first.

In enacting the Bills of Lading Act of 1916, 49 U.S.C.A. §§ 81–124, Congress legislated on the subject of the transportation of goods, as for instance, from New Orleans, Louisiana, to Barranquilla, Colombia, whether as package freight, or bulk freight, or "freight not concealed by packages." § 100.

There does not seem to be any good reason to doubt what Congress intended when it subsequently enacted the Carriage of Goods by Sea Act, in 1936, and provided that neither carrier nor ship "shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package * * *, or in case of goods not shipped in packages, per customary freight unit, * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *"

Clearly, Congress again had in mind package freight, and bulk freight, and "freight not concealed by packages," and the expression "per customary freight unit," referring to all freight but package freight, undoubtedly relates to the usual measure of all "unpackaged" goods trans-

ported, whether measured by count or by weight, etc.

An examination of the United Fruit Company's dock receipt which it issued to libelant, as aforesaid, shows that it acknowledges receipt of "the following number of articles and packages" for transportation on the S.S. Ulua; following which, in columnar subdivisions appears detailed description of said articles and packages.

There are nine such subdivisions and, reading from left to right, there appear the following column headings, viz.: "Marks," "Numbers," "No. of Packages," "Kind of Packages," "Shipper's Declaration of Contents," "Shipper's value," "Shipper's measurement," "Shipper's weight," and "This Space not to be used by Shipper."

Across columns 1 and 2 is written the word "Seismograph"; in column 3, the figure "1"; across columns 4 and 5, the words "Seismograph Drill mounted on Truck"; in columns 6 and 7, nothing; and in column 8 "Shipper's weight," the figure 9555.

Underneath, in columns 3, 4 and 5, and 8, there appears "1 Bx. Parts", 173 pounds.

A third and lower section of the dock receipt contains other subdivisions, one of which is headed: "No. of Packages," and thereunder and therein appears the written word: "Two"; clearly meaning that this was the number of "packages" covered by the dock receipt—the truck, one, the box of parts, the other.

On the selfsame day and as called for by the terms of the dock receipt, the bill of lading was issued. An examination of said bill reveals the fact that under the heading "Description of Goods" appears a columnar subdivision containing nine sections, the third, fourth and sixth of which are headed "Quantities," "Shipper's description of Class and Contents of Packages," and "Shipper's Weight," respectively.

Immediately under the listing of 9—Bxs. Seismograph Equipment—2613 pounds, there appears the description and weight of the truck, in said three mentioned columns, as follows, to-wit:

"1 ——— 1940 * * * Seismograph Shot Hole Drill Truck ——— 9555 pounds."

The truck's description and weight was evidently so entered only after declaration thereof by libelant. In this connection, it may be observed, furthermore, that the bill of lading specifically required that in case of "a single article or package exceeding two tons in weight, the true weight thereof shall be declared at time of delivery to carrier."

So far as affects the question of limitation of value, the parties in interest have, in effect, stipulated that the truck is to be considered a "package," equally with the one box of parts listed on the dock receipt, and with each one of the nine of such boxes listed on the bill of lading (which was issued in attempted compliance with dock receipt requirement) and all of which were stowed under deck, whilst the truck (as always intended by the parties) was carried on deck.

It is immaterial whether or not the uncrated truck was such an article as came within the commonplace definition of "package," inasmuch as the parties contractant elected to so denominate it. No recovery in excess of $500 can be had of ship or carrier with reference to said damaged article, or freight "not concealed by packages," and yet referred to by the parties as a "package." R. H. Eyles v. United Fruit Company, D.C.So.Dist.N.Y., 1942.

But whether this be so or not, the truck was certainly a "freight unit" such as Congress had in mind when it legislated as to transportation of package freight, bulk freight and "freight not concealed by packages," and provided that, unless a greater value were declared by the shipper before shipment and inserted in the bill of lading, neither carrier nor ship may be held liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package or in case of goods not shipped in packages, per customary freight unit.

Because of the foregoing considerations, the Court is of the view that libelant should recover from respondent Lykes Bros. Steamship Company, Inc., as sole party responsible for the damage done to libelant's truck, no more than the tendered principal sum of Five Hundred ($500) Dollars, bearing legal interest from judicial demand up to and inclusive of the stipulated date of tender, i. e., January 31, 1944, as well as all costs accrued up to the time of the tender, but no further.

Due compliance with the requirements of Admiralty Rule 12 of the Court should now follow; and concurrently with the subsequent filing of the Court's formal findings of fact and conclusions of law, the appropriate decree, in consonance there-

with and with this opinion, shall then be entered in due course.

## Findings of Fact and Conclusions of Law

This cause having been heard heretofore, and the Court, by its written opinion filed on July 31, 1944, having announced its decision, does now make and file the following as its formal findings of fact and conclusions of law, viz.:

### Findings of Fact

1. On and about March 21, 1940, and continuously thereafter until at least the final delivery of the entire shipment of goods hereinafter referred to, the steamships Ulua and Margaret Lykes, of the United Fruit Company and Lykes Bros. Steamship Company, Inc., respectively, in the order named, were general ships engaged in common carriage of freight by water, for hire.

2. On or about said March 21, 1940, a shipment of goods was delivered, in good order and condition, by libelant Texas Petroleum Corporation, as shipper, to the United Fruit Company, at the Port of New Orleans, for transportation in its said S. S. Ulua to Cristobal, Canal Zone, and transshipment therefrom, in the S. S. Margaret Lykes, to Barranquilla, Colombia, to be there delivered to said Texas Petroleum Corporation.

3. Such carriage of goods by sea was to be, and was actually, effected in consideration of certain freight charges agreed to be paid, and thereafter paid.

4. Such freight charges were computed at the regular rate prescribed by the United Fruit Company's duly filed and approved tariffs, and were not at such a rate as would have been charged had there been declared by the shipper aforesaid a valuation in excess of $500 per package, when, under such circumstances, higher freight charges would have been assessed in accordance with said tariffs. The libelant at no time declared a valuation in excess of $500 per package, with respect to any item comprised in and composing the aforementioned shipment.

5. Such shipment was so entrusted to, and received by, said United Fruit Company as the result of two deliveries made unto it, the one comprising 8 boxes of seismograph equipment parts, and the other, a seismograph shot hole drill truck, with one other box of such parts loaded thereon.

6. The United Fruit Company's regularly issued dock receipt, covering the second mentioned delivery, specifically called for on-deck carriage and provided for the issuance of the company's regular bill of lading in use for similar shipments.

7. When and as issued said bill of lading covered the whole shipment, comprised of the 9 boxes of seismograph equipment parts and the truck, but no mention was made that, as agreed to between shipper and carrier, the truck was to be stowed and carried on deck. Said bill was never negotiated and remained at all times in the hands of libelant, which did ever continue to be sole owner of any interest therein.

8. The aforementioned shipment was thereupon carried, on direct and customary route, by the S. S. Ulua to Cristobal, where it was delivered, in the same good order and condition as originally received from libelant at New Orleans, to Lykes Bros. Steamship Company, Inc., for carriage by its S. S. Margaret Lykes to Barranquilla.

9. The 9 boxes of seismograph equipment parts were thereupon taken aboard said S. S. Margaret Lykes and, in the same good order and condition as received, were carried and subsequently delivered to Texas Petroleum Corporation at Barranquilla, Colombia, the shipment's final destination.

10. In attempting to also load the truck onto the S. S. Margaret Lykes at Cristobal, Canal Zone, for similar transshipment to Barranquilla, said truck, then and there still being in like good order and condition as received, was damaged and Lykes Bros. Steamship Company, Inc., accepts full responsibility therefor and admits liability in damages but only within, and not beyond, the statutory and contractual limitation of liability to no more than $500 per package, or customary freight unit.

11. The so-damaged truck was thereafter transshipped and carried from Cristobal to Barranquilla, not by the S. S. Margaret Lykes as had been originally intended by both shipper and carrier, but by another ship of the Lykes Bros. Steamship Company, Inc., i. e. the S. S. Velma Lykes, and was there delivered in condition no more damaged than it stood when it was loaded onto said substitute vessel. The parties have stipulated that no liability attaches from such carriage on steamship other than the one named in the bill of lading.

12. The physical damage sustained by the truck before its final loading onto the

S. S. Velma Lykes, and all expenses incurred with respect thereto, amounted to $1,500.

13. Whether or not the S. S. Ulua had carried said truck from New Orleans to Cristobal, Canal Zone, under deck, rather than on deck as was actually done, said truck would have sustained the selfsame damage occasioned it by its attempted loading onto the S. S. Margaret Lykes, at Cristobal, for contracted transshipment to Barranquilla, Colombia.

14. By the terms of the parties' stipulation, it must be considered that formal tender of $500, plus interest, if any, and all costs, was made to libelant as of January 31, 1944, in full settlement of the maximum damages admitted to be due by Lykes Bros. Steamship Company, Inc., for the acknowledged injury done by it to libelant's truck when attempting to so load the same upon the S. S. Margaret Lykes.

## Conclusions of Law

1. The failure of the bill of lading to specify that the truck was to be carried on deck, as had been previously stipulated for in the dock receipt, made libelant immediately cognizant of the fact that such bill was erroneous to that extent, and not that the carrier had breached its contract of carriage because of the truck's stowage on deck, rather than under deck with the boxes of parts.

2. Ordinarily the stowage of cargo on deck under a clean bill of lading operates as a technical deviation and renders the vessel liable "as for a deviation," if the cargo sustains loss or damage by reason of its having been so stowed on, rather than under, deck. This, however, is not so when the shipper holding a clean bill of lading, nevertheless approves and consents to stowage on deck. Under such circumstances as attended the issuance of the clean bill of lading in this case, it is competent for the shipowner, as against the shipper, to show that it was agreed that a specific part of the cargo accepted for shipment was to be carried on deck, even though the bill of lading erroneously fails to note the exception; and the Court holds that under the attendant circumstances here present, there was no "deviation."

3. Even though an actual deviation occurred, libelant then had the option of choosing either to treat such breach as an outright repudiation of the contract of carriage, or to treat the contract of carriage as still in force, reserving whatever legal right to damages it might subsequently be able to successfully urge for any loss or injury coming to it by reason of the on-deck stowage. But libelant having elected to treat such contract of carriage as not repudiated, in order to avail itself thereof to obtain transportation of its property from New Orleans to Barranquilla, the carrier had the right to insist upon the shipper's full compliance with its obligations as shipper and to rely, itself, on any exception clause and limitation of liability clause in the contract.

4. The injury done to the truck resulted in no wise from its having been carried on deck. The damage sustained would have occurred even though there had been no on-deck carriage by the Steamship Ulua. Under such a state of facts, no responsibility attached to the carrier "as for a deviation."

5. By the respective terms of both dock receipt and bill of lading the parties have, in effect, stipulated that the truck, as to shipper and carrier, was, and must be, considered a "package," equally with the one box of parts, listed with such truck on the dock receipt, and with each one of the nine of such boxes, listed with the truck on the bill of lading. It is immaterial whether or not the uncrated truck was such an article as came within the commonplace definition of "package," inasmuch as the parties contractant elected to so denominate it. But whether this be so or not, the truck was certainly a "freight unit." Therefore the $500 limitation per package or customary freight unit provided by the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315, at § 1304(5), is applicable to this case and controls the amount of damage recoverable.

6. In view of all of the foregoing, the Steamship Ulua and United Fruit Company are not responsible to libelant in any sum whatsoever, and Lykes Bros. Steamship Co., Inc., and its S. S. Margaret Lykes, as sole party responsible for the damage, are liable for no more than the tendered principal sum of $500, bearing legal interest from judicial demand up to and including January 31, 1944 as well as all costs accrued up to that time, but no further.