**J. A. FOLGER & COMPANY**

v.

**UNITED FRUIT COMPANY.**

No. 1795.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 23, 1959.

Deutsch, Kerrigan & Stiles, Joaquin Campoy, New Orleans, La., for libelant.

Phelps, Dunbar, Marks, Claverie & Sims, Charles E. Dunbar III, New Orleans, La., for respondent.

CHRISTENBERRY, District Judge.

This is a libel by J. A. Folger & Company against the United Fruit Company for alleged cargo shortage, slackage and damage. The cargo in question consisted of 28,918 bags of coffee shipped from various ports in El Salvador to New Orleans, Louisiana, aboard the Steamship Mayari. Neither party produced any witnesses, the case being submitted to this Court for decision solely on the basis of the pleadings and a stipulation of facts, which the Court adopts as its findings of fact.

## Findings of Fact

### I.

At all material times libelant, J. A. Folger & Company, was and is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri; and respondent, United Fruit Company, was and is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.

### II.

At all material times libelant was the consignee of the cargo of coffee described in the libel, and is entitled to maintain this action.

### III.

On or about January 18, 1949, the 28,918 bags of coffee described in the libel were received by respondent and the Steamship Mayari in apparent good order and condition at various ports in El Salvador for carriage to New Orleans pursuant to bills of lading incorporating the Carriage of Goods by Sea Act.

### IV.

On or about February 4, 1949, the Mayari arrived at the port of New Orleans where said consignments of coffee were subsequently discharged and delivered. However, there was a net short-age of 42 bags of coffee from the consignments in question upon delivery at New Orleans, and an additional 16 bags were delivered at New Orleans in a torn and slack condition with a resulting loss in weight of 362 pounds of coffee, as set forth in the schedules attached to the stipulation and marked "Libelant–23" and "Libelant–24".

### V.

In addition to the above shortage and slackage, at least 516, and perhaps as many as 544, bags of coffee from the consignments in question outturned from the vessel damaged to some extent. Some of the bags were wetted and visibly stained.

### VI.

On September 30, 1949, proctors for libelant submitted an attorney's claim bill with supporting documents in amount of $5,771.05, representing claim for the shortage, slackage and damage to the coffee in question.

### VII.

On October 11, 1949, respondent, through its assistant freight claim agent, now deceased, acknowledged receipt of said claim and supporting documents, stating that the claim would be investigated without prejudice.

### VIII.

On November 16, 1949, proctors for libelant telephoned and were advised that respondent's investigation of the claim had not yet been completed.

### IX.

By letter dated January 30, 1950, a copy of which was attached to the stipulation and marked "Libelant A", proctors for libelant inquired of respondent whether its assistant freight claim agent was in a position to discuss settlement of the claim, and also requested an extension of time up to and including April 4, 1950, within which to bring suit.

### X.

By letter dated February 1, 1950, a copy of which was attached to the stipulation and marked "Libelant B", respond-

ent granted an "extension of time in which to sue through April 4th, 1950, for account of the S/S Mayari". Respondent further advised "We take pleasure in advising we have now received the file from our principals and we shall be glad to discuss adjustment with you some time next week, if you will contact us by telephone for an appointment".

## XI.

Such an appointment was arranged for February 15, 1950, but was subsequently postponed until February 17, 1950. On that date, proctors for libelant met with respondent's assistant freight claim agent in the latter's office and discussed the claim.

## XII.

The first item in libelant's claim bill covering the short delivery of 42 bags of coffee was first reviewed, and after a correction of one minor arithmetical error amounting to $3.02, said assistant freight claim agent agreed to recommend to his superiors in New York that respondent pay $1,958.25 in compromise of that portion of the claim, but it was understood that settlement of the shortage and slackage portions of the claim was contingent upon settlement of the damage portion of the claim. Proctors for libelant agreed to accept said amount.

## XIII.

The second item in libelant's claim bill covering the slack delivery of 362 pounds of coffee was next reviewed, and respondent's freight claim agent agreed to recommend to his superiors in New York that respondent pay $66.21 in compromise of that portion of the claim, but it was understood that settlement of the shortage and slackage portions of the claim was contingent upon settlement of the damage portion of the claim. Proctors for libelant agreed to accept the said amount.

## XIV.

There was then discussed that portion of the claim bill involving the allegedly water damaged coffee. Libelant claimed that 22,377 pounds of coffee had outturned damaged, with the resulting loss

to libelant of $2,992.66 after deducting amounts received from salvage. However, no tentative agreement or figure was reached in regard to the damage portion of the claim, and respondent's freight claim agent requested additional information.

## XV.

Following this, proctors for libelant discussed the damage portion of the claim with a representative of S. Jackson & Son, Inc., weighers and forwarding agents, who acted for libelant herein. A representative of that company thereafter checked its own records and those of respondent, and reported to proctors for libelant that 22,377 pounds of damaged coffee was the correct figure.

## XVI.

By letter dated March 2, 1950, a copy of which was attached to the stipulation and marked "Libelant C", proctors for libelant notified respondent that the aforesaid discrepancies had been resolved, and, accordingly, they desired "again to resume negotiations looking toward settlement".

## XVII.

On March 7, 1950, discussions concerning the damage portion of the claim were resumed. At that time respondent's assistant freight claim agent again stated he would require additional proof of the alleged damage. It was therefore necessary to adjourn that meeting, and proctors for libelant again contacted S. Jackson & Son, Inc., for further information. On March 14, 1950, S. Jackson & Son, Inc. forwarded to proctors for libelant additional information.

## XVIII.

Thereafter, proctors for libelant did not attempt to contact respondent until April 4. At 4:45 P.M. on that date, proctors for libelant called respondent's office and were informed that respondent's assistant freight claim agent had gone for the day. The freight claim office of the United Fruit Company in New Orleans has for many years prior and subsequent to April 4, 1950, closed at 4:30 P.M. The purpose of proctor's telephone call was

to arrange for an appointment to discuss the damage portion of the claim and also to obtain an additional extension of time within which to bring suit.

### XIX.

On the morning of April 5, 1950, proctors for libelant telephoned respondent's assistant freight claim agent at his office and requested an appointment to discuss the damage portion of the claim and also requested that an additional extension of suit time be granted, pointing out that the previous extension of time which had been granted expired the day before, and further outlining the attempt which was made to contact respondent's' freight claim agent on April 4. It was assumed by proctors for libelant that the desired extension of time would be granted because of the negotiations which had been previously had looking toward an amicable disposition of the matter, although they had never previously in other similar cases in dealing with the respondent obtained an extension of time to file suit after any such existing extension had expired. The respondent, through its assistant freight claim agent, declined to grant an additional extension of time and declined to discuss settlement of the claim further. The assistant claim agent explained that no additional extension had been discussed prior to the expiration of the original extension; that it was not the company's policy to grant extensions of time to file suit after any preceding extension had expired, and that he was not authorized to grant such an extension.

### XX.

Proctors for libelant immediately drafted and filed a libel commencing this action the afternoon of April 5, 1950.

### Conclusions of Law

#### I.

This Court has jurisdiction over the subject matter of this suit and the parties herein.

#### II.

■ The merchandise in question having been received by respondent in apparent good order and condition, and having been delivered short in quantity and damaged, the burden is on respondent to show that the loss and damage were occasioned by a cause for which it has no responsibility under its bill of lading or under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.: Clark v. Barnwell, 12 How. 272, 1851, 53 U.S. 272, 13 L.Ed. 985; The Vallescura, 1934, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; Orient Insurance Company v. Flota Mercante Del Estado, D.C.E.D.La.1951, 102 F.Supp. 729, affirmed 5 Cir., 1952, 198 F.2d 740.

#### III.

■ Respondent has failed to establish that the loss and damage were occasioned by any of the perils for which it has no responsibility under its bill of lading or the Carriage of Goods by Sea Act.

#### IV.

Respondent argues that libelant's cause of action was time-barred before suit was instituted, and it cites a series of cases in which the one-year limitation period contained in the Carriage of Goods By Sea Act, 46 U.S.C.A. § 1303 (6), was applied. None of these decisions, however, holds that after timely presentation of claim the statutory one-year period for bringing suit may not be waived by the carrier.

■ Here, it appears that active settlement negotiations were in progress from the time the claim was first presented, with both parties at all times manifesting an intent to dispose of the matter without litigation if at all possible. Apparently, with this end in view, respondent by its letter of February 1, 1950, waived the statutory one-year limitation and created an entirely separate and private one in order that amicable negotiations might continue. When respondent indicated for the first time on April 5, 1950, that it would no longer discuss amicable adjustment, suit was instituted the very same day. Based on these facts this Court holds that the libel was timely filed. Thompson v. Phenix Ins. Co., 1890, 136 U.S. 287, 10 S.Ct.

1019, 34 L.Ed. 408; Swift & Co. Packers v. Compania Caribe (The Cali), 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, 1950 A.M.C. 1089; Green Star S. S. Co. v. Nanyang Bros. Tobacco Co., 9 Cir., 3 F.2d 369, 1925 A.M.C. 221; Pacific Coast Co. v. Yukon Independent Transp. Co., 9 Cir., 1907, 155 F. 29; The Argentino, D. C.S.D.N.Y., 28 F.Supp. 440, 1939 A.M.C. 815; Alten v. McFall, C.C.N.D.N.Y.1898, 89 F. 463; Austin v. Wacks, 1883, 30 Minn. 335, 15 N.W. 409.

### V.

Libelant's damages will be determined on the basis of market value of the coffee at New Orleans in like condition as when shipped, on February 4, 1949, the arrival date of the vessel. The Ansaldo San Georgio I v. Rheinstrom Bros. Co., 1935, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016; St. John's N. F. Shipping Corp. v. S. A. Companhia Geral Commercial de Rio de Janeiro, 1923, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201; Reider v. Thompson, 5 Cir., 1952, 197 F.2d 158; Sanib Corporation v. United Fruit Co., D.C.S.D.N.Y.1947, 74 F.Supp. 64.

Let a decree be entered in favor of libelant in accordance with these findings.