153 F.3d 1076
 1998 A.M.C. 2705, 98 Cal. Daily Op. Serv. 6955,
98 Daily Journal D.A.R. 9595
 KONICA BUSINESS MACHINES, INC., a corporation,
Plaintiff-Appellant-Cross-Appellee,
v.
THE VESSEL "SEA-LAND CONSUMER," her engines, tackle,
apparel, furniture, and appurtenances; Reynolds Leasing
Corp., a corporation; and Sea-Land Services, Inc., a
corporation, Defendants-Appellees-Cross-Appellants.
 Nos. 96-55872, 96-56020.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 3, 1998.
Decided Sept. 3, 1998.
 
 Michael W. Lodwick, Porter, Groff & Lodwick, Long Beach, California, for plaintiff-appellant-cross-appellee.
 Chester D. Hooper, Haight Gardner Holland & Knight, New York, New York, and David M. Salentine, San Francisco, California, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Central District of California; Lourdes G. Baird, District Judge, Presiding. D.C. No. CV-91-06401-LGB.
 Before: FLETCHER, THOMPSON and McKEOWN, Circuit Judges.
 McKEOWN, Circuit Judge:
 
 
 1
 This "cargo overboard" case presents two questions: whether the evidence supports a general custom of stowing shipping containers on deck under a clean bill of lading and whether the district court properly limited the carrier's liability for cargo loss under the Carriage of Goods by Sea Act ("COGSA"). 46 U.S.C. app. § 1304. Konica Business Machines ("Konica") appeals the district court's judgment in favor of Konica for $44,000. The district court found that the terms of the bill of lading limited Sea-Land Service, Inc.'s ("Sea-Land") liability to $1,000 for each Konica photocopy machine that fell overboard in the North Pacific Ocean from the vessel Consumer.[1] We agree and affirm.[2]
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Konica purchased 44 photocopiers from Konica Corporation of Japan ("Konica Japan") which, in turn, contracted with Sea-Land to ship the copiers from Yokohama, Japan to Long Beach, California. Sea-Land issued Konica Japan a clean bill of lading. A clean bill of lading is a contract for carriage of goods that does not specify where the goods will be stowed but effectively represents under-deck cargo stowage.
 
 
 3
 The Consumer is a specially-designed containership with greater carrying capacity above deck than below deck. The vessel has a stowage system on deck consisting of five-tier stacking frames which use a "twist-lock" system to secure containers to the frames. Once secured, Sea-Land's manual requires insertion of locking pins to insure that the twist-locks stay in the locked position.
 
 
 4
 Sea-Land stored Konica's container on deck in a stacking frame. Although the Chief Mate testified that the twist-lock securing Konica's container to the stacking frame was in the locked position prior to voyage, he admitted that he did not insert the locking pins. Based on his twenty years of experience, the Chief Mate believed the locking pins "unnecessary"; he had never seen the twist-lock move from locked to unlocked during a voyage, even in severe storm conditions.
 
 
 5
 Nonetheless, during very rough weather, the twist-locks came unlocked and Konica's container (and ten others) fell overboard. Konica sued to recover the full value of the copiers.
 
 
 6
 The district court originally entered summary judgment in favor of Konica for the actual value of the copiers, $230,028.48. This Court reversed and remanded for trial, holding that Sea-Land raised a triable issue of material fact as to the existence of "a port custom or general usage of the trade" permitting carriage of goods above deck under a clean bill of lading, such that Sea-Land's stowage was not a deviation from the contract. Konica Bus. Machines v. The Vessel Sea-Land Consumer, 47 F.3d 314, 315 (9th Cir.1995) ("Konica I "). After a two-day trial, the district court found that Sea-Land was entitled to limit its liability under the bill of lading because (1) container stowage on deck was a well established custom and was reasonable in light of the ship's design, and (2) the failure to place the locking pins in the twist-lock mechanism was merely negligent and not an unreasonable deviation from the contract.
 
 DISCUSSION
 
 7
 I. CUSTOM OF ABOVE-DECK CARRIAGE ESTABLISHED.
 
 
 8
 Under the traditional maritime rule in St. Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial do Rio de Janeiro, 263 U.S. 119, 124, 44 S.Ct. 30, 68 L.Ed. 201 (1923) ("St. Johns "), "a clean bill of lading imports under deck stowage." Absent express agreement or a general port or trade custom, stowage above deck is a deviation and the carrier cannot rely on liability limitation clauses in the bill of lading. Id.; see also Konica I, 47 F.3d at 315.
 
 
 9
 Since the parties had no agreement to stow cargo on deck, the question is whether Sea-Land established a port or trade custom. The district court squarely decided the factual issue put to it on remand--the existence of a trade custom. We review this finding for clear error and hold that substantial evidence supports the district court's conclusion.
 
 
 10
 Konica argues that on-deck carriage was a deviation because Sea-Land did not prove a custom permitting stowage on deck notwithstanding a clean bill of lading. Sea-Land counters that stowage above deck on a specially-designed containership was a well established trade custom and not a contract deviation. The record supports Sea-Land's position. The district court specifically found that "[b]y 1991 on-deck stowage of containers on containerships was a well established custom of the trade in ocean transportation on a world-wide basis."
 
 
 11
 The vessel Consumer was designed and built to carry containers above deck and was classified as a containership by the American Bureau of Shipping. Sea-Land's expert and its Fleet Services Manager testified that it was both custom and practice to carry containers on deck. And, undisputed testimony established that it is customary for carriers to have the option of choosing where to stow cargo on containerships.[3] A carrier cannot specify on the bill where the cargo will be stowed because, for safety and stability reasons, carriers must make final decisions on cargo location up until the time of loading. Because the record supports a finding that Sea-Land's clean bill of lading is subject to the custom of permitting on-deck stowage at the carrier's option, stowage of Konica's container above deck was not a deviation from the contract. St. Johns, 263 U.S. at 124, 44 S.Ct. 30; Konica I, 47 F.3d at 315; see also Amdahl, 65 F.3d at 147 (no deviation where custom is established).
 
 
 12
 Even without a threshold finding of a custom, Sea-Land has a safe harbor in the reasonableness of its stowage. Under COGSA, enacted thirteen years after St. Johns, "any reasonable deviation" is not deemed a breach of the contract of carriage. 46 U.S.C. app. § 1304(4). Given both the special design of the vessel and the "well established custom" of stowage above deck, the district court correctly concluded that Sea-Land's stowage "was reasonable under the meaning of Section 1304(5) of COGSA ... [and] SEA-LAND did not lose the liability limitations of COGSA due to its on deck stowage of the KONICA container." As in Du Pont de Nemours Int'l S.A. v. S.S. Mormacvega, 493 F.2d 97, 101-103 (2d Cir.1974), the realities of ship loading procedures, the special container design and the container security system rendered the deviation reasonable ("while a clean bill of lading imports below deck stowage, nevertheless stowage elsewhere will be held to be an unreasonable deviation only when a ship's hold is the ordinary and contemplated stowage area ") (emphasis added).
 
 
 13
 II. NEGLIGENCE NOT AN UNREASONABLE DEVIATION.
 
 
 14
 It is undisputed that the Chief Mate did not use the locking pins to secure the twist-lock in the locked position, as required by Sea-Land's manual. Konica characterizes this failure as "reckless" and "unreasonable conduct," thus ousting the liability limitation. The district court found that Sea-Land's failure was "negligent, not more," and "an inherent and anticipated risk of shipping [that] does not rise to the level of an unreasonable deviation." It is well settled that "[m]ere negligence in the stowage or handling of cargo, which might be considered an inherent risk of shipping, is not a deviation." Nemeth v. General Steamship Corp., Ltd., 694 F.2d 609, 613 (9th Cir. 1982). The district court's finding is not clearly erroneous. See Exxon Co. v. Sofec, Inc., 54 F.3d 570, 578-79 (9th Cir. 1995). (district court did not clearly err in finding extraordinarily negligent the Captain's choice not to plot the vessel's position because he felt it was "unnecessary to do so," in violation of Exxon's own manual).
 
 
 15
 While in hindsight it might have been more prudent to use the locking pins, judgment calls made at the time of sailing cannot now be second guessed and transformed from negligence into strict liability. Konica's own expert testified that once the twist-lock is locked, containers are "completely secured" without use of the locking pin. And, the twist-lock is not easily dislodged; unlocking the twist-lock requires a crew member to use a three-foot pipe to turn the locking lever. The Chief Mate's negligence did not deprive Sea-Land of the liability limitation in the bill of lading. The district court properly limited Konica's damages to the contract amount--$44,000.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 While COGSA limits liability to $500 per package, the parties stipulated to $1,000 per package. 46 U.S.C. app. § 1304(5)
 
 
 [2]
 Sea-Land's cross-appeal, filed as a "precaution" and not briefed, is dismissed
 
 
 [3]
 Amdahl Corp. v. Profit Freight Sys., Inc., 65 F.3d 144 (9th Cir.1995), repudiates Konica's argument that a unilateral option can never be a custom. Amdahl held that the carrier's unilateral choice of stopping at "another port" somewhere between Dublin and the United States was custom and not a geographical deviation. Amdahl, 65 F.3d at 147-48 (emphasis added)