## GENERAL TRAFFIC SERVICE CO., Inc. v. THE CAPE SAN MARTIN et al.

United States District Court
S. D. New York.

June 16, 1952.

Lawrence W. McKeown, New York City, for libelant.

Kirlin, Campbell & Keating, New York City (L. de Grove Potter, New York City, of counsel), for respondents.

SUGARMAN, District Judge.

Libelant, General Traffic Service Co., Inc., brought this suit in admiralty against respondents SS Cape San Martin and Isthmian Steamship Co. to recover $4000, the value of an elephant which died while aboard the SS Cape San Martin en route from Colombo, Ceylon, to Savannah, Georgia.

The parties have stipulated that libelant is a wholly owned subsidiary of the Insurance Company of North America, which, although it here sued for $4000 now admits having paid a loss of but $1000, the balance of $3000 having been paid by three other underwriters. These four $1000 payments were made under a policy covering the shipment of six elephants, one of which died as aforesaid.

The libelant, although it paid only $1000, originally claimed subrogation against the respondents to the extent of the full $4000. At the opening of the trial, libelant, having learned that its loss was only $1000, moved to amend the libel to make parties libelant the other three insurance companies who were on the risk. The delay in moving this amendment was explained by libelant's proctor not knowing, when the libel was prepared, that there were other participants in the loss.

The libelant's motion, made orally at the trial to add as parties libelant North River,

Providence Washington and National Ben Franklin, each claiming $1000, is granted.[1]

Six elephants were shipped by A. M. Nagoor Meera Sons & Co. consigned to the order of Irving Trust Co., New York, according to a bill of lading dated February 2, 1947 at Colombo. The bill of lading bears instructions to *"Please Notify*:—The International Import & Export Corp. 240 East 45th Street, New York 17, N. Y.". It bears the endorsement of the shipper in blank, and the endorsement of the consignee to the order of International Import & Export Corp., which also has endorsed the bill of lading in blank.

Libelants assert themselves to be subrogees of rights under the contract by virtue of their payment of the loss, but, the record fails to disclose to whom payment was made or to whose rights libelants are subrogated. Obviously payment was made to either the shipper (A. M. Nagoor Meera Sons & Co.) or to the ultimate holder of the bill of lading (The International Import & Export Corp.). The libelants as subrogees in either event cannot prevail.

The elephants comprising this shipment were carried on deck. The bill of lading was silent as to where the animals should be stowed. Relying on the presumption that cargo will be carried under deck in the absence of contrary language in a bill of lading, the libelants claim that the respondents are liable, asserting the on deck stowage to be a deviation from an essential term of the contract.

[2] Respondent proved that the customary mode of shipping elephants by sea from Ceylon to Savannah was on deck. Therefore, the silence of the bill of lading does not import under deck stowage.[2]

Accordingly, the on deck stowage did not constitute any deviation from the terms of the contract.

■■ There having been no deviation, the custom of carrying elephants on deck was binding on the shipper and the holder of the bill of lading for value whether they knew of the custom or not.[3] Respondents established that the shipper herein actually knew of the custom.

■ Furthermore, absent a deviation or evidence of fault on the part of the carrier, it may rely on the exculpating language of clause 8 of the bill of lading for exoneration from liability for the mortality of the beast.[4] There was, as aforesaid, no deviation and libelant offered no evidence showing fault or neglect of the carrier.

■ The respondents, however, did not merely rely on the contractual exoneration contained in clause 8 of the bill of lading, but also urged the defense of "inherent vice". The libelant, assuming it to be the subrogee of the shipper, was obliged to offer evidence of sound condition at time of shipment.[5] It contented itself solely with the bill of lading recital "Received * * * in apparent good order and condition * * *". This is insufficient.

1. Deupree v. Levinson, 6 Cir., 186 F.2d 297, certiorari denied 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351.

2. Dixon, Irmaos & Cia. Ltda., v. Chase Nat. Bank of City of New York, 2 Cir., 144 F.2d 759; St. Johns N. F. Shipping Corporation, Owner, &c. v. S. A. Companhia Geral Commercial Do Rio De Janeiro, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201; The Sarnia, 2 Cir., 278 F. 459, certiorari denied 258 U.S. 625, 42 S.Ct. 382, 66 L.Ed. 797.

3. The Del Norte, D.C.Cal., 234 F. 667; Hostetter v. Park, 137 U.S. 30, 11 S.Ct. 1, 34 L.Ed. 568.

4. "Live animals, birds, reptiles and fish are received and carried at shipper's risk of accident or mortality, and the Carrier shall not be liable for any loss or damage thereto arising or resulting from any matters mentioned in Section 4, Subsection 2, a to p inclusive, of said Carriage of Goods by Sea Act [46 U.S. C.A. § 1304(2) (a–p)] * * *". Carver on Carriage of Goods by Sea, 7th Ed., § 103, p. 158; Compania De Navigacion La Flecha v. Brauer, 168 U.S. 104, 18 S.Ct. 12, 42 L.Ed. 398, see The Caledonia, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644.

5. American Tobacco Co. v. The Katingo Hadjipatera, D.C., 1948, 81 F.Supp. 438; The Niel Maersk, 2 Cir., 1937, 91 F.2d 932.

176

There will be a decree for the respondent. If any party desires formal findings of fact and conclusions of law, they may be settled on notice.