**ELECTRO–TEC CORPORATION**

v.

**S/S DART ATLANTICA.**

**Civ. A. No. N 83–83.**

United States District Court,
D. Maryland.

Dec. 6, 1984.

James D. Skeen and Constable, Alexander, Daneker & Skeen, Baltimore, Md., for plaintiff.

Richard R. Jackson, Jr. and Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

The plaintiff, Electro-Tec Corporation, filed on November 5, 1984, a motion for summary judgment as to liability. No hearing is necessary on this matter. Local Rule 6.

The principle issue in this motion is a legal one, not a factual one. In essence, the plaintiff moves that as a matter of law the above-deck stowage of cargo under a clean bill of lading, or a lading that has not been clearly marked for the freight owner or agent "above deck," is *per se* an unreasonable deviation under the Carriage of

Goods at Sea Act (COGSA), 46 U.S.C. § 1300 et seq.

This case arises out of the carriage by defendant of metal working machines owned and shipped by the plaintiff. The machines were packed in three containers and loaded on board the S/S DART AT-LANTICA at Southhampton, Great Britain on January 26, 1982. Two of the containers were loaded under the deck but one container was loaded and stowed on deck. The DART ATLANTICA issued bill of lading No. 7001, which contained no notations that any of plaintiff's cargo was stowed on deck. The cargo in the three containers was packed, blocked and braced by Anglia Export Packing, Ltd., in anticipation of normal and usual transit hazards. The plaintiff claims, and the defendant denies, that the cargo was adequately blocked and braced. While on her voyage to Savannah and then Norfolk, the DART ATLANTICA experienced heavy weather, including winds up to Force 11 on the Beaufort Scale. Defendant claims, and plaintiff denies, that the conditions at sea caused the contents of plaintiff's on-deck cargo to burst through the sides of the allegedly inadequately packed containers, and thus, to subsequently suffer damage.

The principle issue before me is not the resolution of the above factual dispute, but the legal question of the defendant's potential liability under COGSA.

### I. Limitations to Liability under COGSA

■ The contract between the parties purports to allow the defendant to carry the goods below deck (¶ 8 of Terms and Conditions, Plaintiff's Exhibit A). The bill of lading, however, does not stipulate the actual place of stowage. Where the carrier issues a clean bill of lading, the cargo is considered contracted to be carried below deck. *St. John's N.F. Shipping Corporation v. S.A. Companhia Geral Commercial Do Rio de Janiero*, 263 U.S. 119, 124, 44 S.Ct. 30, 31, 68 L.Ed. 201 (1923); *Encyclopaedia Britannica, Inc. v. S/S Hong Kong Producer*, 422 F.2d 7, 14 (2d Cir.

1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *Calmaquip Engineering West Hemisphere Corp.*, 650 F.2d 633, 638–9 (5th Cir.1981). Nothing in the *Mormacvega* case has altered this rule. *DuPont de Nemours International S/A v. S/S Mormacvega*, 493 F.2d 97 (2d Cir. 1974). Nor did the enactment of COGSA alter this rule. 46 U.S.C. § 1301(c).

■ For purposes of this motion we will assume that on-deck stowage has not been proven to be usual and customary in this situation. Where a carrier can show that the on-deck stowage is customary, there has been no deviation and the issue of reasonableness does not arise. E.g., *American Cyanamid Co. v. Booth S.C. Co., Ltd.*, 99 F.Supp. 232 (S.D.N.Y.1951), *aff'd* 195 F.2d 529 (2d Cir.1952); *General Traffic Service Co. v. The Cape San Martin*, 108 F.Supp. 174 (S.D.N.Y.1952) (the carrying of elephants on deck is customary). The carrier, of course, will have the opportunity to show that carriage of the plaintiff's machines on deck was the customary carriage of such cargo.

■ It is likely, however, that the issue of reasonable deviation will arise. Although normally required to carry and stow the cargo below deck, the carrier will not be found in material breach of the contract or the statute if the challenged action is a reasonable deviation. 46 U.S.C. § 1304(4). This may serve to limit his liability. What constitutes a reasonable deviation, therefore, is the central question raised by this motion.

The significance of this question should be fully understood at the outset. The two relevant provisions in COGSA read:

... [A]ny reasonable deviation shall not be deemed to be an infringement or breach of this Chapter or the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom ....

46 U.S.C. § 1304(4), and

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount

exceeding $500 per package lawful money of the United States ... unless the nature of and value of such goods have been declared by the shipper before shipping and inserted in the bill of lading. 46 U.S.C. § 1304(5).

■ Previous to the passage of COGSA it was a common practice of carriers to insert "all embracing exceptions to liability in the bill of lading." *Encyclopaedia Britannica, Inc. v. S/S Hong Kong Producer,* 422 F.2d 7, 14 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). The courts, however, were reluctant to enforce these exceptions in all situations. Where an unjustifiable deviation from the contract was made, the courts would oust the contract and make the carrier responsible for the cargo as an insurer. *St. John's N.F. Shipping Corp. v. S.A. Companhia Geral Commercial do Rio de Janiero,* 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201 (1923); *Jones v. The Flying Clipper,* 116 F.Supp. 386 (S.D.N.Y.1953). As discussed below, COGSA essentially codified the traditional rule that an unreasonable or unjustifiable deviation nullified the liability limitations in the contract or statute.

COGSA also recognizes the inherent unfairness in requiring a carrier to be fully liable for goods when the carrier had no idea as to their value, and therefore, no opportunity to accordingly adjust tariffs or stowage. Thus, the statute limits the liability to $500 per package where the shipper fails to declare the value in the bill of lading before shipping. 46 U.S.C. § 1304(5).

In reviewing a copy of the bill of lading, I do not find a declaration of value. Although this is not necessarily dispositive of the issue, I will assume for purposes of this motion that no declaration was made. The importance of plaintiff's motion now becomes clear: unless the shipper can "oust" the contractual or statutory limitations to liability by showing an "unreasonable deviation" from the agreed upon voyage, he can, at best, recover only $500 per package. But whether even an unreasonable deviation can remove the statutory limitation is itself a matter of dispute.

The statute reads that "in any event" the carrier shall not become liable for more than $500 per package. The Seventh Circuit has held that COGSA has thus changed the traditional rule of deviation, and limits liability regardless of the reasonableness of the deviation. *Atlantic Mutual Insurance Co. v. Poseidon Schiffahrt G.m.b.H,* 313 F.2d 872 (7th Cir.) *cert. denied,* 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 53 (1963).

But other circuits have held otherwise. *Nemeth v. General S.S. Corp., Ltd.,* 694 F.2d 609, 612–13 (9th Cir.1982); *Spartus Corp. v. S/S Yafo,* 590 F.2d 1310, 1316–17 (5th Cir.1979); *Encyclopaedia Brittanica, Inc. v. S/S Hong Kong Producer,* 422 F.2d 7, 14 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). *See also* the English case, *The Ixia* [1932] A.C. 328. The seminal case holding liability limitations ineffective where the carrier unreasonably deviates is *Jones v. The Flying Clipper,* 116 F.Supp. 386 (S.D.N.Y. 1953). In a careful analysis of COGSA's legislative history, and the overall purpose and balances of the bill, the court concluded that the statute had not been intended to change the traditional effects of unreasonable deviation:

> There is nothing in the history of the Act to indicate that Congress by fixing the limitation at $500 intended to displace the doctrine of unjustifiable deviation which was so firmly entrenched in maritime law. Such a drastic change in the existing law, with its far-reaching consequences ... would have been expressed in clear and unmistakable terms. *Id.* at 389.

and

> To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier with recklessness to violate the terms ... knowing that it cannot be called upon to pay more than $500 per package. *Id.* at 390.

■ I find the reasoning in the *The Flying Clipper* to be persuasive, and accordingly follow that part of the holding find-

ing the limitation on liability not to be absolute, and to be ineffective where the carrier unreasonably deviates from the contract.

 I also note that the Act does not necessarily relieve the carrier of all liability even if carrying the cargo on deck is a reasonable deviation. It only relieves the carrier of the "loss or damage resulting" from the unreasonable deviation, namely the forfeiture of all liability limitations. The carrier is not relieved, however, of due care and attention towards the cargo. *The Ponce,* 67 F.Supp. 725, 728 (D.N.J.1946), *aff'd.,* 160 F.2d 107 (3d Cir.1947). Where the carrier fails to account for the cargo loss and unsuccessfully asserts all defenses except the claimed limitation of liability, the carrier is accordingly liable for $500 per package. *S/S Mormacvega, supra,* at 100.

## II. The Unreasonable Deviation under COGSA

Many courts have almost axiomatically held above-deck carriage to be an unreasonable deviation from the clean bill of lading. E.g., *Calmaquip Engineering West Hemisphere v. West Coast Carriers, Ltd.,* 650 F.2d 633, 638–39 (5th Cir.1981). It is important to know why. It is clear that there is no statutory language, or definition of "reasonable," that requires this finding. Rather the stowage of cargo above deck was traditionally held to be exposing the goods to a greater risk than had been agreed upon. *St. John's N.F. Shipping Corp., supra.* In *St. John's,* a leading case, the "greater risk" turned out to be the jettisoning of above-deck cargo to relieve the ship in a storm. Although the Supreme Court found the jettisoning to be a reasonable action by the carrier to save the ship, the stowage above-deck was not a reasonable deviation from the contract with the shipper because the goods were exposed to a greater risk. The carrier was, thus, fully liable for the loss of the goods. This traditional rule was not changed by the passage of COGSA but remained part of the general law interpreting the statute's proscription of unreasonable deviation. E.g., *Encyclopaedia Britannica,*

*Inc. v. S/S Hong Kong Producer,* 422 F.2d 7, 14 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *Jones v. The Flying Clipper,* 116 F.Supp. 386 (S.D.N.Y.1953).

In 1974, the Second Circuit declined to apply the "traditional rule" as an axiom. In *DuPont de Nemours International S.A. v. S/S Mormacvega,* 367 F.Supp. 793 (S.D.N.Y.1972), *aff'd,* 493 F.2d 97 (2d Cir. 1974), a container stowed above deck despite a clean bill of lading was lost overboard. Plaintiff urged the court to find an unreasonable deviation from the contract, ousting the contract and leaving the carrier fully liable for the loss. The district court, however, refused "to hold that an *unreasonable* deviation arises in every case, merely because containerized cargo is carried on the deck of a container ship, exactly in accordance with the method of carriage for which she was designed and built …." *Mormacvega, supra,* 367 F.Supp. 793, 800 (S.D.N.Y.1972) (emphasis in original). The Court of Appeals for the Second Circuit affirmed, noting that COGSA provides no definition of "reasonable deviation." Thus, the factual inquiry as to what is "reasonable" was deemed appropriate. Indeed, what was once unreasonable—most on-deck stowage—might no longer be so: "technological innovation and vessel design may justify stowage other than below deck." *Mormacvega, supra,* 493 F.2d 97, 102 (2d Cir.1974). Nor would it follow that just because the on-deck stowage was the cause of the loss, would on-deck stowage be necessarily more dangerous. *Id.*

 The Fourth Circuit has not yet specifically considered this issue, but I am certain it would follow the *Mormacvega* approach to construing a "reasonable deviation" within COGSA. The statute does not offer a definition of "reasonable deviation." The courts, therefore, have generally relied upon pre-statute cases. I find these cases, however, do not stand for the axiom that on-deck carriage is a *per se* unreasonable deviation ousting the contract. In *The William Crane,* 50 Fed. 444 (D.Md.1889), for instance, this Court was urged to hold the carrier in breach of his contract where cotton was stowed on deck

**934**

despite a clean bill of lading. The carrier was able to show the court, however, that the stowage "upon the main deck in such steamers [is] as safe as [if] placed below, if the space thus used is sufficiently protected ...." *Id.* at 445. When the Supreme Court's *St. John's* case is carefully read, one must conclude that this approach is not in conflict with the high Court's analysis. In *St. John's, supra,* the Supreme Court found that the above-deck stowage at issue *actually* exposed the goods to a greater risk than agreed upon.

■ Furthermore, the position taken by the Second Circuit in *Mormacvega, supra,* is in accord with the general construction of "deviation" under COGSA. For instance, a deviation from the regular and usual route a ship should take will be found "reasonable" if it is minor and justifiable, *American Metal Company v. M/V Belleville,* 284 F.Supp. 1002 (S.D.N.Y.1968) (where the vessel deviated 10–15 miles from the regular course in order to drop a pilot off) or where it served to actually shorten the voyage with the intention of benefiting the cargo, *American Cyanamid Co. v. Booth S.S. Co., Ltd.,* 99 F.Supp. 232 (S.D.N.Y.1951), *aff'd,* 195 F.2d 529 (2d Cir. 1952). I cannot find that COGSA, either in its express provisions or the background from which it was enacted, would countenance an inflexible rule requiring the harsh result of making a carrier an insurer of goods he has never agreed to insure because of an immaterial breach of the agreement. COGSA is designed to be a fair balance between the interests of the shipper and the carrier. E.g., *Encyclopaedia Britannica, Inc. v. S/S Hong Kong Producer,* 422 F.2d 7, 14 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). It would not be in keeping with purposes of the statute to deny a carrier its statutory protections where the carrier's conduct is, in effect, an immaterial breach.

■ Finally, I note that this Court, like the Second Circuit in *Mormacvega, supra,* is willing to consider the effect on COGSA and maritime law of technological innovation and changing vessel design. *Commonwealth Petrochemicals, Inc. v. S/S*

*Puerto Rico,* 455 F.Supp. 310, 313 (D.Md. 1978), *rev'd on other grounds,* 607 F.2d 322 (4th Cir.1979). What was unreasonable yesterday may be reasonable today. Thus, the carrier will be given the opportunity to show that stowage on deck of the cargo was only a reasonable deviation from the contract.

A separate Order confirming this ruling will be entered.