**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

**v.**

**DART CONTAINERLINE COMPANY, LTD., Dart Containerline, Inc., and Triple Carriers, Ltd., in personam and S/S DART AMERICANA, in rem, Defendants.**

Civ. A. No. 84–326–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 2, 1985.

Harold M. Kingsley, New York City, and Carter B.S. Furr, Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., for plaintiff.

Freehill, Hogan & Mahar, New York City, and Philip N. Davey, Seawell, Dalton, Hughes & Timms, Norfolk, Va., for defendants.

## MEMORANDUM ORDER

DOUMAR, District Judge.

This action was brought by the Insurance Company of America (ICA), under a subrogation agreement with Shelby-Williams Industries, Inc. ("Shelby") against Dart Containerline Company, Ltd., Dart Containerline, Inc., Triple Carriers, Ltd., and the S/S Dart Americana (collectively "Dart") to recover the value of a cargo of chairs allegedly damaged by Dart. The action was brought pursuant to the Carriage of Goods by Sea Act (COGSA) 46 U.S.C. §§ 1300, *et seq.* The parties have stipulated to a set of facts; and the matter is presently before the Court on these fact stipulations and the trial briefs of both sides.

## I. THE FACTS

### A. *Summary of the Parties' Stipulations*

Shelby purchased two hundred and nine cartons of 1,254 unassembled chairs from Slovenijales of Yugoslavia. Dart sent an empty container to Slovenijales in which to pack the unassembled chairs. Slovenijales loaded the cartons of chair parts into the container and shipped the container to Dart in Bremerhaven, Germany.

Dart received the sealed container on February 3, 1982. A container list made by Dart dated February 5, 1982 showed that the container had one dent in the left side, one dent in the right side and two dents in the rear. On February 6, 1982, Dart issued a bill of lading which stated that "the goods as specified above [are] in apparent good order and condition unless otherwise stated" and which noted no exceptions, though Dart had not opened the container for inspection.

The M/V Dart Americana with the container aboard then sailed from Bremerhaven on February 6, 1982 and arrived in Norfolk, Virginia on February 22, 1982. Three days later, MTI Terminal Labor hired by Hipage Company, Inc. on behalf of Shelby broke the seal and opened the container for United States Customs officials. After the cargo was cleared for entry into the United States, the container was resealed pursuant to Shelby's instructions.

Shelby hired Tailer Train, Inc. (Tailer) to arrange for transportation of the container from Norfolk to Shelby's premises in Morristown, Tennessee. On behalf of Shelby, Tailer contacted Service Transfer, a trucking company, and Southern Railway. When Service Transfer picked up the container from Dart, Dart issued a report dated February 26, 1982 which showed the container to have 19 patches and numerous dents and scrapes. Service Transfer delivered the container to Southern Railway, which then carried it by rail to Morristown, Tennessee. The container arrived on Shelby's premises on March 5, and remained there until May 12, 1982, when Shelby first opened the container.

Inspection of the cargo revealed it to be laden with moisture and mildew. The next day, May 13, Shelby notified Dart of its claim for damage. The container was returned to Dart via the Southern Railway. In addition to the previously documented patches, a report by Dart dated May 24, 1982 showed the existence of a hole. David Sowards, hired by INA to inspect the container, stated that the container had numerous holes, some of which had been patched, but that not all of the patches were watertight.

Finding the cargo unsalvagable, Shelby destroyed the entire cargo.

### B. *The Court's Findings*

### 1. *Goods in Good Condition When Delivered to Dart*

■ A clean bill of lading is prima facie evidence of receipt by the carrier of the goods in apparent good order. 46 U.S.C. § 1303(3) and (4);[1] *Yeramex Internat. v. S.S. Tendo*, 1977 AMC 1807, 1823–27 (E.D.

---

1. COGSA expressly requires the carrier to state "the apparent order and condition of the goods" in the bill of lading. 46 U.S.C. § 1303(3)(c). When a carrier has no reasonable means of checking "any marks, number, quantity or weight" on or of the cargo, it does not have to state them in the bill. *Id.* However, the carrier is still required to comment on the "condition" of the goods. Nothing in the Act purports to relieve it of this responsibility—not even the lack of a convenient means of checking. This bill then serves as "prima facie evidence of the receipt by the carrier of the goods as therein described...." 46 U.S.C. § 1303(4).

This rule furthers a Congressional purpose behind COGSA: "to enhance the currency and negotiability of ocean bills of lading." *Yeramex, supra,* 1977 AMC at 1826; see also *Spanish American Skin Co. v. The Ferngulf,* 242 F.2d 551, 553 (2d Cir.1957); *Kupfermann v. United States,* 227 F.2d 348, 350 (2d Cir.1955); *George F. Pettinos, Inc. v. American Export Lines,* 68 F.Supp. 759, 764 (E.D.Pa.1947), *aff'd* 159 F.2d 247 (3d Cir.1947). If a merchant can look upon the face of a bill of lading and rely on the condition of the goods stated thereon, the purchase and transfer of goods can be facilitated with ease in a paper transaction.

While opening a sealed container to inspect its contents may not be convenient for the carrier, it does have the right and opportunity to do so. If it declines this opportunity, as Dart did in

Va.1977), *rev'd on other grounds* 595 F.2d 943 (4th Cir.1979), *M. Paquet & Co. v. Dart Containerline Co., Inc.,* 1973 AMC 926, 928–29, 74 Misc.2d 352, 343 N.Y.S.2d 446 (N.Y.Cir.Ct.1973); *Daido Line v. Thomas P. Gonzales Corp.,* 299 F.2d 669, 673 n. 9 (9th Cir.1962); *Interstate Steel Corp. v. S.S. Crystal Gem,* 317 F.Supp. 112 (S.D.N.Y.1970). Shelby has presented Dart's clean bill of lading and Dart does not contest the fact that it received the goods in good condition. Thus, this Court finds as a fact that the goods were undamaged when delivered to Dart in Germany.

### 2. *Dart Caused Defects in Container*

The goods thus left Germany in good condition and they left in an old, but apparently watertight container furnished by Dart. In Germany, the container was noted to have several dents on its sides but no patches. By the time it reached Norfolk, it was covered with some 10 metal patches and one tape patch on its top, 7 patches on its sides, and 1 patch on its front. It is the uncontroverted testimony of David Sowards that many of those patches were not watertight. Thus, this Court finds that the container was not watertight and that this defective condition was due to Dart's ineffectual repair during the sea voyage.

### 3. *Time of Damage to Cargo*

Water could have entered the defective container either on the high seas or on land during the transportation of the container from Norfolk to Shelby's premises in Tennessee and storage thereon.

This Court finds that some water did enter while the container was on the high seas. The numerous holes in the roof appeared to the witness Sowards to be old because of rust. Considering that the container had 19 patches, some of which were

not watertight, and that it was stored on deck during the entire 16–day ocean voyage, the Court is persuaded that some water entered the container while it was in Dart's possession.

Dart keeps records of the nature and extent of repairs to its containers but upon request of the plaintiff could not produce the records of repairs on this particular container as to the numerous patches which had been applied during this sea voyage. Nor could it show when, by whom or in what manner the repairs were made. The Court finds that the repairs were not appropriate for a container subject to the weather. It is clear that the cargo was stored by Dart on deck subject to the weather and sea in a container furnished by it that was not watertight.

Once water entered the container of furniture some damage must have occurred. Defendant challenges the time when mildew occurred but does not mention the other source of damage, moisture.[2] David Sowards reported:

> Upon inspection, the chairs were found with mildew marks and laden with moisture. In my opinion, it appeared that the chairs would eventually blister and weaken as a result of the influx of water into the container coming in contact with the chairs.

Thus once water entered the container, this Court finds that some damage occurred.

Further damage may have also occurred after the cargo left Dart's control and was transported and stored by agents of Shelby in Dart's container.

## II. DISCUSSION

### A. *Prima Facie Case*

Once the owner establishes a prima facie case by showing that the goods were deliv-

---

this case, for reasons of its own convenience, it cannot later complain that the goods it accepted were defective, especially where, as here, the type of damage would have been evident on inspection. See e.g. *Daido Line v. Thomas P. Gonzalez Corp.,* 299 F.2d 669, 673 n. 9 (9th Cir.1962).

Presumably, recognizing this, Dart has not contested plaintiff's prima facie case. In its

trial brief at page 10, Dart states: "Dart does not contend herein that the goods were damaged when shipped, but rather that the goods were damaged after receipt by plaintiff-consignee.".

**2.** It is stipulated that the chairs were laden with moisture and mildew (Fact Stip. # 33) and that moisture and mildew caused the chairs to be unusable (Fact Stip. # 36).

ered to the carrier in good condition and were returned by the carrier in bad condition, the burden of proof switches to the carrier to show that it was not responsible for the damage. See *Yeramex Intern. v. S.S. Tendo*, 595 F.2d 943, 946 (4th Cir. 1979); *Matters of Intercontinental Properties Management*, 604 F.2d 254, 262–63 (4th Cir.1979); *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009, 1014–15 (2d Cir.1972); *Cummins Sales & Service, Inc. v. London & Overseas Ins. Co.*, 476 F.2d 498, 500 (5th Cir.1973), cert. denied sub nom *Deutsche Dampfschiff Ges. "Hansa" v. Cummins Sales & Services, Inc.*, 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239 (1973). Shelby has satisfied its prima facie case by showing receipt of the goods by Dart in good condition (Finding # 1) and out turn of the goods in Norfolk with some damage (Finding # 3). The burden now shifts to Dart to show why it is not liable.

### B. *Defendant's Burden*

■ Dart argues that Shelby's failure to notify it of damage within three days of delivery, as required by their contract and by COGSA, 46 U.S.C. § 1303(6), creates a presumption that the goods were delivered in good order and thus switches the burden of proof back to Shelby to show why Dart should be liable for the damage.

Whatever benefit or presumption Dart might have gained from the three day notice requirement was lost when Dart materially deviated from the contract by carrying the cargo on deck. When a carrier materially deviates from a contract, "the carrier no longer benefits from any terms in the contract of carriage which are favorable to the carrier." *Calmaquip Eng. West Hemisphere v. West Coast Carriers*, 650 F.2d 633, 638 (5th Cir.1981). The parties' legal relationship changes: "the carrier becomes in relation to the shipper, an insurer of the shipper's goods." *Id.* See also *Nemeth v. General S.S. Corp. Ltd.*, 694 F.2d 609, 612–13 (9th Cir.1982); *Du*

**3.** In short, before COGSA, carriers with their vastly superior bargaining power, had drafted and forced shippers to submit to bills of lading which relieved carriers of almost all liability.

*Pont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97, 100 n. 9, 101 (2d Cir.1974). Thus, there are two issues to be discussed: whether on deck carriage was a deviation; and if it was, whether the deviation was unreasonable.

■ The container was stowed on deck. The face of the bill of lading did not show that on deck stowage might take place. In this case, a fine print clause on the back of the bill of lading noted that on deck stowage was an option to the carrier but the front of the bill carried no warning of this fact. However, if on deck stowage is not noted on the face of the bill, a shipper is entitled to expect below deck stowage; and on deck stowage is a deviation. *Encyclopedia Britannica v. S.S. Hong Kong Producer*, 422 F.2d 7, 11–15 (2d Cir.1969); *Electro Tec Corp. v. S.S. Dart Atlantica*, 598 F.Supp. 929, 933 (D.Md.1984); Tetley, *Marine Cargo Claims* (2nd ed.) 319–28.

In *Encyclopedia Britannica*, the short form bill of lading which was given to the shipper contained no notice on its face of on deck carriage. The short form did refer the shipper to the long form which contained a fine print clause noting that on deck stowage was an option to the carrier. The Second Circuit found that the clause was insufficient warning to the carrier. It held that without notice of on deck stowage on the face of the bill, the carrier was obliged to carry the cargo below deck and thus on deck stowage was a deviation. 422 F.2d at 11–15.

In reaching that conclusion, the Second Circuit went through an exhaustive examination of the legislative objectives of COGSA.[3] *Id.* at 11–15. One of those objectives was to relieve shippers of the unreasonable burden of scrutinizing the fine print on the back of every carrier's bill before sending out a package. *Id.* at 14. The House Report stated:

*Id.* at 11. Recognizing that these bills had become contracts of adhesion, Congress enacted COGSA to redress the balance between the parties and to standardize provisions. *Id.*

The uniformity and simplification of bills of lading will be of immense value to shippers who will be relieved of the necessity of closely examining all bills of lading to determine the exceptions contained therein to ascertain their rights and responsibilities ... On former occasions copies of bills of lading were presented to the committee. These bills contained exception clauses in print so fine they could only be read with great difficulty.

H.R.Rep. # 2218, 74th Cong., 2d Sess. 7 (1936). Dart's fine print clause concerning on deck stowage was the type of clause Congress had in mind when it enacted COGSA. Cf., *Nemeth v. General S.S. Corp., Ltd.*, 694 F.2d 609, 611 (9th Cir.1982) (under COGSA "microscopic" clause on back of bill of lading not sufficient notice to shipper that it could opt for a higher liability).

In *Con. Petrochemicals, Inc. v. S/S Puerto Rico*, 607 F.2d 322 (4th Cir.1979), the Fourth Circuit recognized the exception to the effect of the bill of lading for clauses that a shipper could not reasonably be expected to find. Applying *Encyclopedia Britannica*, the Fourth Circuit held that the clause before it, which defined the term "package", did not fall into that exception, because a shipper should reasonably anticipate such a clause in the bill. *Id.* at 327. Considering the long-standing rule that a shipper can expect below deck stowage unless noted, *Electro Tec Corp. v. S/S Dart Atlantica*, 598 F.Supp. 929, 933 (D.Md. 1984) (analysis of the development and application of this rule by courts), Tetley, *Marine Cargo Claims* (2nd ed.) 319–28 (same), this Court finds that the clause concerning stowage does fall into the exception.

■ It should also be noted that the *Con. Petrochemicals* case, which involved a domestic voyage, was not governed by COGSA but by the Harter Act. 607 F.2d at 325. The parties had merely incorporated COGSA by reference. *Id.* at 324. Where COGSA is simply a contract term, it is not given "statute rank" and hence is applied with less force. *Id.* at 325. In holding the exception inapplicable to the clause before it, the Fourth Circuit was guided by the fact that Congress was much less concerned with uniformity in domestic voyages. *Id.* at 325, 327. The Court noted that the result may be different where COGSA applies "ex proprio vigore". *Id.* at 325. In the instant case which involves an international voyage, COGSA, and the congressional concern for uniformity embodied therein, do apply with full force. Applying COGSA, this Court finds that the clause before it, which a shipper would reasonably not expect, trenches upon Congress' concern for uniformity in bills of international voyages.

■ Finding on deck stowage to be a deviation, the Court must then decide whether the deviation was unreasonable and hence material. 46 U.S.C. § 1304(4).[4] The Court is not unaware of the technological advancements in containerization and container ships in recent years. See *Electro Tec Corp., supra*, 598 F.Supp. at 929. Thus, we do not hold that carriage on deck is *per se* unreasonable; rather, the burden is on the carrier to show that the deviation in the particular instance was reasonable. *Electro Tec Corp., supra*, 598 F.Supp. at 933; *Du Pont de Nemours International S.A. v. S/S Mormacvega*, 367 F.Supp. 793, 800 (S.D.N.Y.1972), *aff'd*, 493 F.2d 97 (2d Cir.1974) (deviation reasonable considering type of cargo (plastic) and ship design for on deck stowage). However, no such evidence has been submitted by the defendant to this Court. No one even contends that furniture would be the type of cargo normally stored on deck. In view of the fact

---

**4.** 46 U.S.C. § 1304(4) provides in relevant part: ... [A]ny reasonable deviation shall not be deemed to be an infringement or breach of this Act or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom....

Thus, to be material under COGSA, a deviation must be unreasonable. See, e.g., *Calmaquip Eng. West Hemisphere v. West Coast Carriers*, 650 F.2d 633, 638 (5th Cir.1981).

that on deck stowage was linked to a cause of damage, coupled with the absence of any evidence that this was a reasonable deviation, the Court must find, in this case, that the deviation was unreasonable and thus material.

Since the carrier lost any benefit it may have gained from the three day notice provision by materially deviating from the contract, the burden clearly remains on Dart to show why it should not be liable for the damage to the chair parts.

## C. *Extent of Liability*

Defendant claims that damage occurred during inland transportation and storage on Shelby's premises and that it is not liable for such damage because the container was out of its custody at that time.

■ Assuming, *arguendo*, that Dart is correct, Dart still has the burden of proving what portion of the damage was not its responsibility. After the plaintiff has presented its prima facie case by showing receipt by the carrier of good cargo and out-turn of cargo which is at least partially damaged, the burden then shifts to the defendant to show why it is not liable for any damage or, alternatively, what portion of damage falls under a statutory or contractual exemption to its liability. If the carrier cannot prove what portion of damage is exempt, the carrier will be liable for the entire damaged cargo. See *Swedish American Line v. Evans Products Co.*, 431 F.2d 869, 870 (4th Cir.1970); *Blaser Brothers, Inc. v. Northern Pan American Line*, 628 F.2d 376, 382 (5th Cir.1980).

■ In *Swedish American Line*, as in this case, the defendant carrier transported cargo by sea from Europe to Norfolk, Virginia where it was then transferred to other carriers for inland transportation. The defendant in that case argued that it should be liable only for damage which was clearly sustained on the sea voyage. The Fourth Circuit rejected the defendant's argument:

> Evans [the shipper] did not have to prove a negative—that none of the damage occurred during transportation by rail—for under the Carriage of Goods by Sea Act §§ 3–4 [46 U.S.C. §§ 1303–04 (1964)], when Evans proved good delivery of all the hardboard in Sweden and bad outturn of a portion in Norfolk, the ship then had to prove what part of the balance of the cargo was unloaded in good condition.

431 F.2d at 870. Similarly, the Fifth Circuit in *Blaser Brothers, Inc.* held:

> [O]nce the shipper has presented its prima facie case, the carrier, if unable to rebut the shipper's position, will be liable for the entire damaged cargo unless it can prove what portion was not actually damaged or was damaged under one of the exceptions of § 1304(2).

Thus, it is clearly up to Dart to show what portion of damage it is not liable for.

Dart has failed to meet this burden of proof. In essence, Dart's argument is that it is not liable for damage occurring when water entered a container that it made defective, because, at the time the water entered, the container was no longer in its possession. However, assuming *arguendo*, that Dart's contention is correct, Dart has failed to show what portion of the damage was due to this cause. Dart points to three facts: (1) failure of plaintiff's inspector to test the water in the container to see if it was salt or fresh; (2) existence of one hole in the container when it was returned by Shelby that had not been documented before; (3) opening of the sealed container for customs inspection at Norfolk by dock labor who did not then report damage. From these facts Dart reasons that it is probable that most of the damage occurred while the container was on Shelby's premises. The Court does not follow Dart's logic. The facts which Dart highlights are not affirmative proof of damage but rather instances of absence of proof[5]

---

**5.** When Dart introduced these facts in its trial brief, it referred to them as "evidence or the lack thereof" (Trial Brief at 9).

that plaintiff could have presented.[6]  Since the burden is on Dart, not the plaintiff, and Dart has not produced evidence showing what portion of damage, if any, was sustained after the container left its custody, this Court finds Dart liable for the entire damaged cargo.

### D. *Damages*

■ Normally a carrier's liability for loss of cargo is limited by COGSA to $500 per package.  46 U.S.C. § 1304(5).  However, a material deviation by the carrier deprives it of this limit on liability.  *Lime International v. Alpha North American Line*, 1979 AMC 2693 (S.D.N.Y.1979) (material deviation of on deck stowage where on deck stowage option noted in clause on back but not on front of bill of lading deprived carrier of § 1304(5) liability limit); see also *Calmaquip Eng. West Hemisphere v. West Coast Carriers*, 650 F.2d 633, 638–39 (5th Cir.1981) (material deviation of on deck stowage deprived carrier of § 1304(5) liability limit); *Nemeth v. General S.S. Corp., Ltd.*, 694 F.2d 609, 612–13 (9th Cir.1982) (same); *DuPont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97, 100 n. 9 (2d Cir.1974).

Dart's agents inspected the damaged container on May 24, 1982.  Accordingly, this Court finds for the plaintiff in the sum of $29,469.00 and enters judgment against Dart Containerline Company, Ltd., Dart Containerline, Inc., *in personam*, and the S/S Dart Americana, *in rem*, for $29,-469.00 with interest from May 24, 1982.

IT IS SO ORDERED.

---

**6.** Dart, in its brief, particularly stresses the fact that plaintiff's inspector failed to test the water-damaged goods for traces of salt which could have established damage by sea wash.  However, there is nothing in the fact stipulations or defendant's brief which suggests that Dart was stopped from making these same tests.  Dart never inspected the cargo after being notified by Shelby of the damage.  Dart did not test the inside of the container, which was returned to it on May 24, 1982, for the presence of chlorides.  Arguing the absence of proof could cut both ways.