**H.F. STAIGER COMPANY, Plaintiff,**

v.

**P.T. TRIKORA LLOYD, Defendant.**

**Civ. A. No. 87–395–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 9, 1988.

R. John Barrett, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for plaintiff.

Richard Ivan Gulick, Norfolk, Va., for defendant.

## MEMORANDUM OPINION

MacKENZIE, Senior District Judge.

Plaintiff, H.F. Staiger Company ("Staiger") filed this action in admiralty on June 12, 1987, alleging damage in the amount of $30,003.33 to a cargo of crude rubber shipped from Indonesia aboard the M/V TRAUTENBELS, a ship chartered by the defendant, P.T. Trikora Lloyd ("Trikora"). Trial was held before this Court on January 7, 1988.

### I.

Staiger, a New York corporation engaged in the business of buying and selling imported crude rubber, was the purchaser of some 555 pallets of crude rubber from Trikora, an Indonesian corporation engaged in the carriage of crude rubber from Indonesia to the United States. On October 25, 1986, the M/V TRAUTENBELS was loaded at Palembang, Indonesia, with a cargo of pepper, cassia, and the 555 pallets of crude rubber. On the very same day, Trikora issued five bills of lading acknowledging receipt of the pallets in apparent good order and condition, with no exceptions.

Bill of Lading (BOL) No. 5 covered 250 pallets of SIR 20 rubber. (Ex. 4.) BOL Nos. 3, 4, 13 and 14 covered 305 pallets of the lesser quality, brown pressed rubber. (Ex. 5, 1, 3 and 2 respectively.) The bills of lading were presented by the shipper, P.T. Lingga Djaja, to its bank for payment, and then transferred to Staiger as evidence of title. (Tr. 51.)

The crude rubber had been pressed into large blocks, which were then stacked 30–36 in wooden pallets (or crates). (Tr. 13–14.) Each individual block had been placed in a light mil polyethylene bag with the open end flapped over, and the whole stack of blocks was covered with a heavier weight polyethylene covering. (Tr. 22–23, 78–80.) A wooden cover was placed on top of the crate, and then the entire pallet was secured with steel bands. (Ex. 28dd–28gg.)

During the loading on October 25, 1986, officers of the M/V TRAUTENBELS visually inspected the external packaging of each pallet for signs of damage, including exposure to fresh water. (Tr. 5.) The bills of lading, which were issued on the very same day, noted no external signs of damage.

Three days later, however, the TRAUTENBELS' chief officer signed an exception list prepared by the "Chief Checker" at Palembang, which showed that the packing on some of the crates in BOL No. 3 was broken, and that several crates in BOL Nos. 4, 5, 13 and 14 were wet. (Exs. 25–27.)

On December 16, 1987, while the M/V TRAUTENBELS was still en route to Norfolk, Trikora sent a letter to Staiger, notifying it that the packing of the pallets was of an inferior quality. Enclosed was a copy of a similar letter sent the day before to P.T. Lingga Djaja, which stated that "[w]ith such a condition of the pallets, it will be very easy that damage to the cargo will occur during loading, discharging as well as during voyage to port of destination." (Ex. 15.)

The M/V TRAUTENBELS arrived in Norfolk, Virginia, on December 22, 1986, and the pallets of rubber were discharged onto a covered pier at Lamberts Point Docks, Inc. A joint survey was commenced on December 30, 1987, revealing

that many of the crates were irregular and overpacked, with the result that they had not stacked well and had broken apart during the voyage. (Tr. 42–43.)

It was also discovered that the rubber blocks on many of the pallets showed both mold and the white, "bleaching" discoloration associated with exposure to water. (Tr. 11–12, 84–85.) Tests made on the rubber indicated that the damage had been caused by fresh water, most likely rain. (Tr. 18–19.) The pallets were then sorted according to those that showed water damage and those that did not.

On January 6, 1988, a joint condition survey was conducted by Captain Arthur L. Sykes, a marine surveyor representing Staiger's underwriter, Atlantic Mutual Insurance Company, and Colin P. Smith, a marine surveyor representing Trikora. Pallets were chosen from those with evident bleaching, and the blocks of rubber were unloaded and sorted according to those showing bleach and those not. Several of the damaged blocks were cut open and were found to have internal bleaching as well. (Exs. 28z–28cc.) Staiger's Vice President, Dennis J. Fenley, testified that this internal discoloration was the result of improper drying during the production process, and that it was common in rubber shipments from Indonesia. (Tr. 48–49.)

On the basis of this condition survey, Captain Sykes prepared a depreciation allowance for the shipment of rubber. He determined that a $.04 per pound allowance was the appropriate measurement of depreciation resulting from all of the bleaching uncovered during the survey. In BOL Nos. 3, 4, 13 and 14, he then concluded that external wetting represented 70 percent of this depreciation while internal discoloration represented 30 percent. A readjusted allowance of $.028 per pound represented the damage caused by the external wetting alone. (Tr. 19–20, 37–38.) In BOL No. 5, no damage was found to have occurred from internal bleaching, and the depreciation allowance was kept at $.04 per pound. (Ex. 29, P 3–4.)

Smith approved of the depreciation computations, with the exception of the $.04 per pound allowance applied to BOL No. 5, which he felt was too high and should have been closer to the $.028 figure. (Tr. 91, 94–95; Ex. 31.)

On December 22, 23 and 26, 1986, Smith performed a hatch survey on the M/V TRAUTENBELS. No evidence of water entry was found in any of the holds where the pallets of rubber had been stored. (Tr. 71, 75.)

### II.

■ To make out a *prima facie* case under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300, *et seq.*, Staiger must show that the crude rubber was delivered to the M/V TRAUTENBELS in good condition, and that the same rubber was damaged upon discharge in Norfolk. *Cummins Sales & Services, Inc. v. London & Overseas Insurance Co.*, 476 F.2d 498, 500 (5th Cir.), *cert. denied*, 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239 (1973); *Insurance Co. of North America v. Dart Containerline Company, Ltd.*, 629 F.Supp. 781, 784–85 (E.D.Va.1985). Trikora's issuance of clean bills of lading is sufficient in itself to show receipt of the rubber in good condition, *see* 46 U.S.C.App. § 1303(3) and (4), and there is ample evidence in the record that upon discharge in Norfolk, the rubber was damaged by bleach and mold. Thus, Staiger has made its *prima facie* case, and the burden now shifts to Trikora to show that it is not liable for the damage.

Nonetheless, Trikora argues that no *prima facie* case has been made. It contends that Staiger cannot rely on the bills of lading in making its *prima facie* case because the damage in question was not externally observable. In support of its argument, Trikora cites two recent cases from the Southern District of New York, *Allan L. Grant v. M/V Athos*, 86 Civ. 2215 (JFK), slip op., 1987 WL 49855 (S.D.N.Y. June 9, 1987), and *Tokio Marine & Fire Insurance v. M/V L. Jalabert Bontang*, 624 F.Supp. 402 (S.D.N.Y.1985), *aff'd mem.*, 800 F.2d 1128 (2d Cir.1986), both of which deal with water damage to shipments of

crude rubber. In each of these cases, the district court held that the buyer could not rely on a clean bill of lading because the plastic covering placed over the pallets of rubber prevented the carrier from observing any water damage during its pre-loading inspection, and that a "window" had to be cut in the plastic covering before the damage could be seen. *Grant*, at 5, 10; *Tokio Marine*, 624 F.Supp. at 408–09.

*Grant* and *Tokio Marine*, however, are distinguishable on their facts. It is true that in most cases, a bill of lading refers only to the external appearance of the cargo, and it has no probative force with respect to any internal, unobservable damage that may later be discovered. *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir.1981); *United States v. Lykes Bros. Steamship Co., Inc.*, 511 F.2d 218, 228 (5th Cir.1975). In this case however, Trikora was aware of external discrepancies, i.e., wetting and inferior packing, and yet it chose not to list these discrepancies as exceptions on the bills of lading. Moreover, the evidence in this case indicates that the bleaching would have been observable through the plastic covering, without windowing. Testimony at trial revealed that the bleaching could have been observed from a distance of four to eight feet. (Tr. 26, 80.) A reasonable inspection of the pallets would have included a visual inspection within this distance.

█ Assuming, however, that the bleaching was obscured by the plastic covering, this Court finds that Trikora is still bound by its clean bills of lading. A bill of lading must state the condition of the goods themselves, even if the condition is not externally observable, where the carrier knows or should have known that the goods are damaged. *T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 373 n. 82 (5th Cir.1980). The crew of the M/V TRAUTENBELS was aware of the inferior packaging of the rubber crates, and the fact that many of the pallets were wet. These observations were more than sufficient to put the crew on notice that there was a risk of water damage and that a closer inspection of the cargo was necessary.

█ The Court also finds that Trikora is estopped from rebutting Staiger's *prima facie* case with evidence of preloading damage. *See Cummins*, 476 F.2d at 500–01; *Yeramex International v. S.S. Tendo*, 1977 AMC 1807, 1822–23 (E.D.Va.1977). Trikora's issuance of clean bills of lading when it knew, at the very least, that the pallets were wet and packed in an inferior manner estops it from now asserting that the rubber was water damaged prior to loading. The statutory policy of permitting a buyer to rely on a bill of lading is an important one, for the buyer has little opportunity to observe the cargo before giving value and taking title. This policy should not be undermined by allowing a carrier to offer evidence in direct contradiction to the representations in its bill of lading. *See, e.g., Daido Line v. Thomas P. Gonzalez Corporation*, 299 F.2d 669, 673 n. 9 (9th Cir.1962); *Kupfermann v. United States*, 227 F.2d 348, 350 (2d Cir.1955).

Trikora offers no reason to suggest that Staiger improperly relied on the bills of lading, nor does it offer any evidence other than pre-loading damage to rebut Staiger's *prima facie* case. Accordingly, the Court finds that Trikora is liable for the bleach and mold damage in question.

█ Trikora's final argument is that Staiger's damages are based on a depreciation allowance too speculative to allow recovery. The Court finds no merit in this contention. Depreciation allowances, developed from condition surveys of the cargo by all interested parties, are a proper means by which to measure cargo damage. *See Compagnie De Navigation, etc. v. Mondial United Corporation*, 316 F.2d 163, 170–71 (5th Cir.1963); *Yeramex*, 1977 AMC at 1837. Trikora's surveyor approved of the $.028 per pound depreciation allowance as it applied to BOL Nos. 3, 4, 13 and 14. The only disagreement was over the $.04 allowance applied to BOL No. 5, and the Court finds that the evidence at trial supports Staiger's figure. As to the more general question of whether bleached rubber represents a loss in value, there was ample evidence at trial that bleaching decreases the processability of crude rubber,

and consequently, the market value as well. (Tr. 15–16, 57–59.)

An Order will be entered contemporaneously herewith declaring that pursuant to the provisions of COGSA, 46 U.S.C.App. §§ 1300, *et seq.*, Trikora is liable to Staiger in the sum of $30,003.33 plus interest for the bleach and mold damage to 555 pallets of Indonesian crude rubber discharged in Norfolk, Virginia, on December 22, 1986, from the M/V TRAUTENBELS.

### ORDER

In accord with a Memorandum Opinion filed this day, it is ORDERED:

1. Under the provisions of COGSA, 46 U.S.C.App. §§ 1300, *et seq.*, the defendant, P.T. Trikora Lloyd ("Trikora"), is liable to the plaintiff, H.F. Staiger Company ("Staiger"), in the sum of $30,003.33 for bleach and mold damage to 555 pallets of Indonesian crude rubber discharged in Norfolk, Virginia, on December 22, 1986, from the M/V TRAUTENBELS.

2. Trikora shall pay pre-judgment interest at the rate of 7.01% from December 22, 1986.

3. Trikora shall also pay the costs incurred by Staiger in the litigation of this matter.

4. Both sides shall pay their own attorneys' fees.

It is so ORDERED.